In re SHELL OIL REFINERY.

Robert ADAMS, Sr.

v.

SHELL OIL COMPANY.

Civ. A. Nos. 88–1935, 88–2719.

United States District Court,
E.D. Louisiana.

Sept. 26, 1990.

John J. Cummings, III, Liaison Counsel, Daniel E. Becnel, Jr., Calvin Fayard, Jr., Wendell H. Gauthier, Jr., Thomas Kliebert, Jr., Stephen B. Murray, Morris Reed, W. Hugh Sibley, Joseph M. Bruno, Plaintiffs' Legal Committee, New Orleans, La., for plaintiffs.

Thomas J. Wyllie, James E. Blazek, Timothy W. Cerniglia, Scott E. Delacroix, Edwin C. Laizer, Martin A. Stern, Deborah B. Rouen, New Orleans, La., for defendant, Shell Oil Co.

## ORDER AND REASONS

MENTZ, District Judge.

The court addresses here the plaintiffs' request for discovery of the defendant's experts. The defense experts include some who are expected to testify at trial and some who are not expected to testify at trial. The court finds that while discovery of experts expected to testify at trial is premature, the plaintiffs are not entitled to any discovery of experts not expected to testify at trial.

### Facts

On May 5, 1988, the catalytic cracking unit (CCU) at the Shell Oil Refinery, Norco, Louisiana, exploded. The first of several suits ultimately certified as a class action was filed that day. The day after the explosion, the parties entered an agreement giving the Plaintiff's Legal Committee (PLC) and its experts access to the CCU to inspect, measure, and photograph. *See* Transcript attached to Rec.Doc. # 4a; Consent Agreement, Rec.Doc. # 6; and Consent Agreement, Rec.Doc. # 7. Following their agreement, Shell Oil Company (Shell) preserved all materials tagged by the PLC, as well as additional materials Shell wanted preserved.

Later, Shell conducted at its research facility metallurgical and chemical tests[1] on material removed from the explosion site. R.E. Nordstrom and Paul A. Nelson are two Shell employees who were present during the testing. The PLC's experts observed certain of these tests.

From the beginning of this case, both the PLC and Shell retained experts and actively investigated the cause of the explosion. Three months post-explosion, the court ordered: "Any expert who has visited the NORCO plant and will be an expert witness at trial shall submit a preliminary report to the court on Friday, September 23, 1988." Shell submitted five reports: two from its in-house employees, R.E. Nordstrom and Paul A. Nelson; one from Failure Analysis Associates; one from Arthur D. Little, Inc.; and one from Hercules, Inc. The PLC submitted three expert reports: one from C H & A Engineering Group; one from Metallurgical & Materials Technologies, Inc.; and one from Perez Architects. The parties did not exchange the preliminary expert reports until later, in April, 1989.

During course of this litigation, the PLC filed several motions seeking expert discovery, particularly the identity of Shell's experts and the results of the tests conducted by Shell on the CCU material. In each instance, the court ruled against allowing the discovery, unless Shell intended to use the expert or test result at trial. *See* Minute Entry entered October 18, 1988 (Interrogatories 8, 9) Rec.Doc. # 274; Minute Entry entered November 4, 1988, Rec. Doc. # 309; Minute Entry entered January 31, 1989, p. 2, Rec.Doc. # 441; Minute Entry entered August 22, 1989, Rec.Doc. # 807.

Before the court is the PLC's Motion for Reconsideration of the Court's August 21,

---

1. Other types of tests may have been conducted, but the court has no knowledge of the nature of other tests, if any.

1989 Ruling. Specifically, the PLC seeks the results of tests conducted by Shell on material from the CCU and leave of court to depose the authors of the preliminary expert reports.[2] Shell states that it has not yet decided which test results and experts it intends to use at trial. Shell also states that it does not intend to call Nordstrom and Nelson at trial or to use either of their preliminary expert reports.

Experts Expected to be Called at Trial

■ Although Fed.R.Civ.P. 26(b)(4)(A) allows for interrogatory discovery of experts expected to be called at trial, the court has discretion in this complex class action to control the sequence of discovery. *See* Fed.R.Civ.P. 26(b)(1). The Case Management Order (CMO), adopted by the court on August 13, 1990, governs the time frame for discovery of experts. *See* Rec.Doc. #1140, 1149. Under the CMO, the parties need not disclose the identity of experts expected to be called at trial until March 1, 1991. The exchange of expert reports is May 1, 1991 and expert depositions start on June 15, 1991. At this time, Shell has no obligation to decide which experts it will call at trial or disclose information about any experts expected to be called at trial. As stated in the Advisory Committee Notes to Rule 26:

> The procedure established in subsection (b)(4)(A) holds the risk [that one side will benefit unduly from the other side's better preparation] to a minimum. Discovery is limited to trial witnesses, and *may be obtained only at a time when the parties know who their expert will be. A party must as a practical matter prepare his own case in advance of that time, for he can hardly hope to build his case out of his opponent's expertise.* (Emphasis added).

Those who will testify at trial often cannot be identified until the later stages of litigation. *See United States v. 215.7 Acres of Land,* 719 F.Supp. 273, 278 (D.Del.1989)

(tacit approval of the government's posture of indecision about what experts would be called at trial). Therefore, the court finds that the PLC's attempt to obtain discovery from experts expected to be called at trial is premature.[3]

Experts Not Expected to be Called at Trial

■ Under Fed.R.Civ.P. 26(b)(4)(B), the facts known and opinions held by non-testifying experts who are retained or specially employed in anticipation of litigation or preparation for trial are subject to discovery only in exceptional circumstances. This Rule recognizes that with non-testifying experts, there is no need to obtain discovery for effective cross-examination. *See Hoover v. United States Dep't of the Interior,* 611 F.2d 1132, 1142 (5th Cir.1980) ("The primary purpose of [Rule 26(b)(4)(A)'s required disclosures about experts expected to be called at trial] is to permit the opposing party to prepare an effective cross-examination.") The Rule is also designed to prevent a party from building his case on the diligent preparation of his adversary. *See* Pielemeier, *Discovery of Non–Testifying 'In–House' Experts Under Federal Rules of Civil Procedure,* 58 Ind.L.J. 597, 607–08 (1984).

■ Shell has stated its intention not to call at trial its in-house experts, Nordstrom and Nelson. No one disputes that Nordstrom and Nelson are experts. Even though Shell submitted the reports of Nordstrom and Nelson as preliminary reports of experts it expected to call at trial, Shell's later decision not to call them at trial is permissible. Prior to the court imposed deadline for exchange of witness lists, a party is free to make strategic decisions changing an anticipated witness to a non-witness. *See Eliasen v. Hamilton,* 111 F.R.D. 396, 401 (N.D.Ill.1986); *Mantolete v. Bolger,* 96 F.R.D. 179, 182 n. 2 (D.Ariz.1982). Thus, Nordstrom and Nel-

---

**2.** The PLC also sought the identity of the authors of the preliminary expert reports submitted on behalf of Shell by Arthur D. Little, Inc. and Hercules, Inc. After the PLC filed its motion, Shell volunteered the names of these authors, so this particular request is moot.

**3.** The court made the same ruling on Shell's motion to discover similar information from the PLC. *See* Minute Entry entered September 6, 1990, Rec.Doc. #1188.

son are properly designated as non-testifying experts.

■ The PLC maintains that Nordstrom and Nelson should be treated as ordinary witnesses under Fed.R.Civ.P. 26(b)(1) because they are in-house experts who would have performed the tests in question as part of their regular duties regardless of litigation. Alternatively, the PLC maintains that if Nordstrom and Nelson are non-testifying experts retained or specially employed in anticipation of litigation, then under Fed.R.Civ.P. 26(b)(4)(B) their facts and opinions are discoverable because of exceptional circumstances requiring great expense to duplicate the tests performed by Shell.

Nordstrom is the Manager of Heat Transfer and Pressure Equipment for Shell. His duties consist of technical input on operations and on design and construction of new facilities. Nelson is a Research Manager whose duties consist of managing 11 research engineers and nine technicians for Shell. Their affidavits show that during the week following the explosion, Shell's legal department and outside counsel requested them to help the investigation team defend the lawsuits filed against Shell. Also, in September, 1988, James Blasek, outside counsel for Shell, requested Nordstrom and Nelson to prepare preliminary reports of their investigation and study of the explosion. Nordstrom and Nelson sent their preliminary reports to only Blasek. Although Nordstrom and Nelson have not been assigned to work exclusively on this litigation, they remain available to assist outside counsel on an as needed basis.

The affidavits show that there can be no serious dispute that Nordstrom and Nelson's investigation and study of the explosion was in anticipation of litigation. Whether they were "retained or specially employed" within the meaning of Fed.R. Civ.P. 26(b)(4)(B) is a closer question.

The courts and other legal authority are not in agreement on the question of whether an in-house expert can be "retained or specially employed". *Compare, e.g., Marine Petroleum Co. v. Champlin Petrole-*

*um Co.,* 641 F.2d 984 (D.C.Cir.1979); *In re Sinking of Barge 'Ranger I',* 92 F.R.D. 486, 489 n. 5 (S.D.Tex.1981); *Seiffer v. Topsy's Int'l, Inc.,* 69 F.R.D. 69 (D.C.Kansas 1975); Comment, *The In–House Expert Witness: Discovery Under the Federal Rules of Civil Procedure,* 33 S.D.L.Rev. 283 (1988); Pielemeier, *Discovery of Non–Testifying "In–House" Experts,* 58 Ind. L.J. 597; and Graham, *Discovery of Experts Under Rule 26(b)(4) of the Federal Rules of Civil Procedure: Part One, An Analytical Study,* 1976 U.Ill.L.F. 895, concluding that in-house experts can be "retained or specially employed", *with Dallas v. Marion Power Shovel Co., Inc.,* 126 F.R.D. 539 (S.D.Ill.1989); *Kansas–Nebraska Natural Gas v. Marathon Oil Co.,* 109 F.R.D. 12 (D.Neb.1983); and *Virginia Elec. Power Co. v. Sun Shipbuilding & Dry Dock Co.,* 68 F.R.D. 397, 407 (E.D.Va. 1975), concluding that in-house experts should be treated as ordinary witnesses under Rule 26(b)(1).

■ The court finds that the persuasive authority favors application of Rule 26(b)(4)(B) to non-testifying in-house experts. To rule otherwise would encourage economic waste by requiring an employer to hire independent experts to obtain the protection of Rule 26(b)(4). Protection of an in-house expert's opinion's supports improved public safety and other social benefits of self-analysis. That the work of an in-house expert is used not only to defend a lawsuit but also to improve a company's operations or product design does not remove him from the parameters of Rule 26(b)(4)(B). *See Hermsdorfer v. American Motors Corp.,* 96 F.R.D. 13, 15 (W.D.N.Y. 1982).

■ Not all in-house experts fall within the parameters of the retained or specially employed language of Rule 26(b)(4)(B). The Advisory Committee Notes exclude from the scope of Rule 26(b)(4)(B) "an expert who is simply a general employee of the party not specially employed on the case." Those in-house experts who are not retained or specially employed should be treated as ordinary witnesses under Rule 26(b)(1), and if their work was in anticipa-

tion of litigation or preparation of trial, then discovery must be analyzed under the work product doctrine, Rule 26(b)(3).

Neither the Rule nor the Notes explain when a general employee may become retained or specially employed. Some courts have found that the terms retained or specially employed mean "something more than simply the assignment of a current employee to a particular problem raised by current litigation." *See Kansas–Nebraska Natural Gas Co., Inc.,* 109 F.R.D. at 16. To the contrary, other authority suggests that "a regular employee may become specially employed when he is designated and assigned by a party to apply his expertise to a particular matter in anticipation of litigation or for trial." *See* Pielemeier, *Discovery of Non–Testifying In–House Experts,* 58 Ind.L.J. at 605 (citing Graham, *Discovery of Experts Under Rule 26(b)(4),* 1976 U.Ill.L.F. note 3, at 942.)

■ Whether an in-house expert is retained or specially employed must be decided case-by-case. In this case, the court finds that Nordstrom and Nelson were retained or specially employed by Shell in preparation for trial. Shell's attorneys engaged Nordstrom and Nelson to perform specific tasks to help them defend the lawsuit. At the direction of Shell's legal department and outside counsel, Nordstrom and Nelson investigated and studied the cause of the explosion, and prepared preliminary reports. Copies of the reports were sent only to Shell's outside counsel. Although Nordstrom and Nelson might have studied the cause of the explosion regardless of litigation, their usual duties do not include litigation assistance. That Nordstrom and Nelson were not paid additional compensation or assigned exclusively to the litigation is not conclusive. An in-house expert may be specially employed without additional compensation or an exclusive assignment.

■ Having found that Nordstrom and Nelson are experts retained or specially employed in preparation for trial, the court must determine whether exceptional circumstances exist to permit discovery. A party seeking to show exceptional circum-

stances under Rule 26(b)(4)(B) carries a heavy burden. *See Hoover v. United States Dep't of the Interior,* 611 F.2d 1132, 1142 n. 13 (5th Cir.1980). The exceptional circumstances requirement has been interpreted by the courts to mean an inability to obtain equivalent information from other sources. *See Marine Petroleum,* 641 F.2d at 994; *Candebat v. Zimmer, Inc.,* 1990 WL 43922, No. 89–659 (E.D.La. April 6, 1990); *Sabido v. ANR Freight System, Inc.,* 1988 WL 58408, No. 87–5662 (E.D.La. May 31, 1988); *United States v. Hooker Chemicals & Plastics Corp.,* 112 F.R.D. 333, 338 (W.D.N.Y.1986); *Grindell v. American Motors Corp.,* 108 F.R.D. 94, 95 (W.D.N.Y.1985); *Mantolete v. Bolger,* 96 F.R.D. at 181; *Puerto Rico Aqueduct and Sewer Authority v. Clow Corp.,* 108 F.R.D. 304, 310 (D.P.R.1985).

The plaintiffs offered the affidavit of Thomas Shelton, President of Metallurgical and Materials Technology, Inc., to show that this case meets the exceptional circumstances requirement. Mr. Shelton was present at certain of the tests conducted by Shell and estimates that the total cost to duplicate the investigation and testing performed by Shell would be in the range of $230,000 to $315,000. The plaintiffs cited *Pearl Brewing Co. v. Jos. Schlitz Brewing Co.,* 415 F.Supp. 1122 (S.D.Tex.1976), to show that expense can satisfy the exceptional circumstances requirement. In that antitrust case, the plaintiff's experts, who were not expected to be called at trial, created a complicated computer program for a beer marketing distribution model. The plaintiff's expert to be called at trial relied on this model in reaching his conclusions. The court found that the defendant's expert would be unable to understand the model without explanations of the undefined short-hand codes used in the computer program. For defendant's expert to attempt to unravel the short-hand codes alone would be unduly time consuming and expensive. The court granted discovery of the code explanations only. The court noted that the defendant was not trying to find support for his case out of the plaintiff's efforts, but only expediting analysis of the plaintiff's trial expert's conclusions. In other words, the defendant

was not going to rely on the plaintiff's distribution model to support its defense, but needed to know the codes in order for its expert to analyze the plaintiff's trial expert's conclusions.

In contrast, the plaintiffs in the case at bar do not seek Shell's test results to understand how Shell's experts will substantiate their conclusions at trial. The plaintiffs want Shell's test results to avoid the expense of conducting their own tests. To allow discovery of Shell's test results under these circumstances would defeat the Rule's intended purposes of protecting trial strategy and preventing one party from having a free ride at the expense of the other party.

The plaintiffs can obtain the substantial equivalent by having their own experts conduct tests. As a result of the parties' consent agreements, the PLC had access to the CCU for a total of fifteen days beginning on May 7 through June 3, 1988.[4] *See* Transcript attached to Rec.Doc. # 4a; Consent Agreement, Rec.Doc. # 6; and Consent Agreement, Rec.Doc. # 7. The plaintiffs also have access to the materials tested by Shell. *See* Minute Entry entered January 31, 1989, page 2, Rec.Doc. # 441. Aside from having to pay for their own testing, the plaintiffs will suffer no loss. During the period set aside for expert discovery, the parties can discover the basis for each other's expert's conclusions, including information received from non-testifying experts. For these reasons, the plaintiffs have failed to show exceptional circumstances.

Accordingly,

IT IS ORDERED that the Plaintiffs' Legal Committee's Motion for Reconsideration of the August 21, 1989 Ruling in the District Court Re: Request for Production of Documents First Wave: Number 11 is DENIED.

---

4. The PLC had access to the CCU on the following days: Saturday, May 7; Monday, May 9; Friday, May 13; Wednesday, May 18; Thursday, May 19; Friday, May 20; Monday, May 23; Tuesday, May 24; Wednesday, May 25; Thursday, May 26; Friday, May 27; Tuesday, May 31; Wednesday, June 1; Thursday, June 2; and Friday, June 3, 1988.