**Denise and Ivan RUBEL, Plaintiffs,**

v.

**ELI LILLY AND COMPANY, Defendant.**

**No. 86 Civ. 3834 (LAK).**

United States District Court,
S.D. New York.

March 20, 1995.

John M. Calimafde, Joan M. McGillycuddy, and Lynn Borchers, Hopgood, Calimafde, Kalil & Judlowe, New York City, for plaintiffs.

Russell H. Beatie and Peter S. Liaskos, Beatie, King & Abate, New York City, for defendant.

### MEMORANDUM OPINION AND ORDER

KAPLAN, District Judge.

Plaintiff moves for reconsideration of our trial ruling quashing a subpoena served on

Dr. Wylie C. Hembree and precluding plaintiff from calling him as a witness. The motion for reconsideration is granted, particularly in light of additional information that has become available since our original statement on the trial record. We nevertheless adhere to our original ruling, given the current state of the record, and write briefly to amplify after additional reflection the basis for our decision.

## Facts

This is a product liability case in which plaintiff Denise Rubel seeks to recover against defendant Eli Lilly and Company ("Lilly") on the theory that diethylstilbestrol ("DES") ingested by plaintiff's mother during her pregnancy with plaintiff caused abnormalities of plaintiff's reproductive tract that have resulted in her infertility and in fear of cancer. Lilly defends on the ground that DES did not cause the abnormalities or infertility of which plaintiff complains and that her inability to conceive is the product of her husband's infertility. Plaintiff long has been aware of Lilly's contention that Mrs. Rubel's failure to conceive is attributable to her husband rather than to her own condition.

Dr. Hembree initially was consulted by counsel for Lilly, examined the plaintiff and her husband at Lilly's request, and rendered a report. He was deposed by plaintiff in 1988. The record discloses no objection to the taking of the deposition or the production of his report. At the time of the deposition, however, counsel for Lilly advised plaintiff's counsel that Lilly had not yet determined whether Lilly would call Dr. Hembree at trial. (PX 61, at 11, 57)

The pretrial order was signed by the parties in September 1994. None of the parties designated Dr. Hembree as a trial witness.[1] Plaintiff stated her intention to offer designated portions of Dr. Hembree's deposition. Lilly indicated its objection to any testimony from Dr. Hembree on grounds including, but not limited to, "relevance, capacity and work product." (Pretrial order at 39) None of the parties made any effort to resolve the

issue of the admissibility of Dr. Hembree's deposition prior to trial.

Plaintiff sought to offer portions of the deposition during her case in chief. The Court sustained Lilly's objection on the ground that Dr. Hembree was subject to subpoena and the deposition therefore was not admissible under FED.R.CIV.P. 32. Plaintiff subsequently subpoenaed the doctor, posing the question as to which reconsideration now is sought.

## Discussion

As at least one commentator has noted, the case law dealing with the question whether a party to a lawsuit may obtain discovery of or testimony from an expert consulted by the other, but not to be called at trial by the consulting party, is confused at best. Note, *Must the Show Go On? Defining When One Party May Call or Compel An Opposing Party's Consultative Expert to Testify,* 78 MINN.L.REV. 1191, 1199–1203 (1994) (hereinafter *Minnesota Note*); *see, e.g., Durflinger v. Artiles,* 727 F.2d 888, 891 (10th Cir.1984) (upholding exclusion in part as discovery sanction); *Campbell v. M.V Gemini,* 619 F.2d 24, 27 (9th Cir.1980) (same); *Crowe v. Nivison,* 145 F.R.D. 657 (D.Md.1993) (allowing *de bene esse* deposition); *Healy v. Counts,* 100 F.R.D. 493 (D.Colo.1984) (excluding evidence despite lack of discovery abuse); *Steele v. Seglie,* 1986 WL 30765 (D.Kan. Mar. 27, 1986); *Matter of Vestavia Associates, L.P.,* 105 B.R. 680 (Bankr. M.D.Fla.1989) (excluding evidence). The Second Circuit has not passed on the problem.

Experts enjoy no constitutional or statutory immunity from compulsory process. *Kaufman v. Edelstein,* 539 F.2d 811, 820 (2d Cir.1976). Moreover, the desire for all probative information in service of the overall search for truth weighs in favor of compelled testimony and, indeed, discovery even from consultative experts. *See, e.g., Gilly v. City of New York,* 69 N.Y.2d 509, 512, 516 N.Y.S.2d 166, 167, 508 N.E.2d 901, 901–02 (1987). On the other hand, several consider-

---

1. At the time, Mr. Rubel was a plaintiff, and another pharmaceutical company was a defendant in a consolidated case. Both of those parties subsequently were dismissed from the action.

ations may cut the other way, depending upon the particular circumstances.

First, there is a important interest in allowing counsel to obtain the expert advice they need in order properly to evaluate and present their clients' positions without fear that every consultation with an expert may yield grist for the adversary's mill. This policy underlies Fed.R.Civ.P. 26(b)(4)(B)'s severe limitation on the discovery of consultative, as opposed to testifying, experts. Where, as here, the party who consulted the expert in question has allowed discovery without objection, the policy has little or no application. *See, e.g., Steele v. Seglie,* 1986 WL 30765, *4 (D.Kan. Mar. 27, 1986).

Second, the Federal Rules of Civil Procedure reflect a view that it would be unfair to allow a party to benefit from the effort and expense incurred by the other in preparing its case. *See, e.g., Ager v. Jane C. Stormont Hospital,* 622 F.2d 496, 502 (10th Cir.1980). In other words, the general policy, which is not without exceptions, is that each side should prepare its own case at its own expense.

Third, there are concerns peculiar to the issue of compelled testimony from nontestifying experts. Some have suggested that allowing the use of compulsion might diminish the willingness of experts to serve as consultants and, in any case, that it is unfair to the experts. *See, e.g., Kaufman,* 539 F.2d at 821–22; *Healy v. Counts,* 100 F.R.D. at 497; *People ex rel. Kraushaar Bros. & Co. v. Thorpe,* 296 N.Y. 223, 72 N.E.2d 165 (1947); *Minnesota Note* at 1197–98. Where, as here, the expert agreed to consult on the case, the concern is diminished. *See, e.g., Gilly,* 69 N.Y.2d at 511–12, 516 N.Y.S.2d at 167, 508 N.E.2d at 901–02.

Fourth, and perhaps most pertinent, permitting one party to call an expert previously retained or consulted by the other side entails a risk of very substantial prejudice stemming from the fact of the prior retention, quite apart from the substance of the testimony. One leading commentator aptly has characterized the fact of the prior retention by the adversary as "explosive." 8 C. Wright, A. Miller & R. Marcus, Federal Practice and Procedure: Civil § 2032, at 447 (1994).

While this enumeration of considerations is not exhaustive, it suffices for resolution of this case.

■ Defendant has argued that the testimony should be excluded under Rule 26(b)(4)(B), contending that the "exceptional circumstances" standard there set forth with respect to the availability of discovery of a consultative expert ought to apply. Having given further consideration to the matter, we do not regard Rule 26(b)(4)(B) as controlling in view of the fact that Lilly evidently did not object to the deposition of Dr. Hembree. The extraordinary circumstances standard was promulgated, at least in part, to protect the interest in free consultation between counsel and non-testifying experts. Once Lilly acquiesced in the deposition, it surrendered the protection to the extent it was designed to protect that interest. *Steel v. Seglie,* 1986 WL 30765, *4. Hence, the problem posed here is the standard that ought to be applied where the interest in free consultation is not in jeopardy. The fundamental considerations in these circumstances, then, are the interests of plaintiff and the courts in an informed resolution of plaintiff's claim and the "explosive" prejudice that could attach to Dr. Hembree's testimony solely by virtue of his prior retention by Lilly.

If this were a case in which the expert sought to be called possessed unique evidence, plaintiff's case would have considerable appeal. While it is difficult, particularly given the reticence of plaintiff's counsel, for the Court to make the assessment, it appears to us that the substance of Dr. Hembree's proposed testimony, even giving the plaintiff the benefit of the doubt, would overlap very substantially the testimony of plaintiff's other witnesses.[2] In consequence, the evidence in

---

2. Indeed, we see little in Dr. Hembree's proposed testimony that has not been covered by plaintiff's other experts. Plaintiff's initial offer of proof essentially was unilluminating. (Tr. 267–70) Plaintiff made a formal offer of proof following our trial ruling to the effect that it was Dr. Hembree's opinion, based on post-coital and other tests, that Mr. Rubel was fertile. (Tr. 344–45) In seeking reconsideration, plaintiff asserted that there were some points that could be covered

question appears to be cumulative save, of course, for the fact that Dr. Hembree was retained in the first instance by Lilly.

On the other side of the ledger is the potential prejudice to Lilly. We recognize that it may seem possible, theoretically, to permit plaintiff to call Dr. Hembree but to prohibit any disclosure of his prior engagement by Lilly. *See* WRIGHT ET AL., *supra; Steele*, 1986 WL 30765, *4; *but see Healy*, 100 F.R.D. at 496–97. But there are, we think, at least two responses to that suggestion. First, the jury already is aware of the identity of Mrs. Rubel's treating physicians and therefore might conclude from the absence of any indication of the circumstances in which Dr. Hembree came to be involved that he had been engaged by Lilly even if that fact were not mentioned.[3] Second, as Professor Wright put it, "It may be possible to keep this explosive fact from the jury at trial, but there seems little reason to require

that effort if other expert witnesses are available." *Id.* (footnote omitted).

Given the absence of any claim of discovery abuse, we view the question here presented as governed principally by FED.R.Ev. 403. Although one might debate whether the issue should be dealt with under the Rules of Civil Procedure or the Federal Rules of Evidence and the appropriate standard for allowing a party to call an expert previously retained by the other side, we do not consider such a debate particularly meaningful, as any appropriate standard would involve consideration both of the degree of need for the testimony by the calling party and of the extent of the prejudice to the party seeking exclusion. *See, e.g., Minnesota Note*, at 1209–11. Indeed, Judge Friendly's opinion in *Carter–Wallace, Inc. v. Otte*, 474 F.2d 529 (2d Cir.1972), *cert. denied*, 412 U.S. 929, 93 S.Ct. 2753, 37 L.Ed.2d 156 (1973), took a similar approach to an analogous question. In holding that the trial

---

only by Dr. Hembree, but declined to identify them for fear of alerting Lilly to any deficiencies that plaintiff perceived in her proof. (*Id.* 556–57) Counsel did, however, state that the points he wanted to elicit from Dr. Hembree were in his deposition. (*Id.*) Accordingly, the designated portions of the deposition, which we have reviewed, are an appropriate summary of the evidence that plaintiff evidently hopes to adduce from Dr. Hembree.

The deposition testimony identified by plaintiff concerns fertility tests performed on the Rubels, the test results, and Dr. Hembree's opinion based on these tests as to the causes of the Rubels' fertility problems. Dr. Hembree's physical examination of Mr. Rubel revealed no abnormalities. (PX 61 24:5–25:17) He examined certain of Mr. Rubel's hormones, which he found to be normal. (*Id.* 26:24–29–13) He found Mr. Rubel's sperm count and concentration, sperm motility, and sperm morphology to be within normal fertile parameters. (*Id.* at 33:7–40:1) Post-coital tests, which examined the sperm's interaction with the woman's cervical mucous after intercourse, were performed on the Rubels. (*Id.* at 42:12–49:9) These found that Mrs. Rubel's mucous was scanty and not receptive to Mr. Rubel's sperm. (*Id.* 56:1–57:18, 59:3–5) Dr. Hembree also tested both Mr. and Mrs. Rubel for the presence of antibodies that might be responsible for reducing the effectiveness of or killing Mr. Rubel's sperm. Although he found some irregularities, the doctor concluded that no such antibodies were present in either Mr. or Mrs. Rubel. (*Id.* 66:6–71:25, 102:9–17) Dr. Hembree concluded that Mr. Rubel's sperm made

him a good candidate for *in vitro* fertilization. (*Id.* 125:21–126:2)

Dr. Koren, one of plaintiff's treating physicians and a distinguished authority, testified on behalf of plaintiff that he evaluated Mr. Rubel several times in the 1981–82 period with respect to his sperm count, sperm motility, volume and clarity and performed the Krammer sperm penetration test. All results, in his view, were satisfactory. (Tr. 448:20–449:24, 460:22–462:2, 464:8–18) He did not perform post-coital tests although he had the benefit of such tests performed by another physician. (*Id.* 462:3–4) Dr. Koren acknowledged on cross-examination that there are tests for men in comparable circumstances in 1992 that were not available when he treated the Rubels in 1981–82, but that the tests he did in 1981–82 are those that usually covered the subject. He expressed the opinion that Mrs. Rubel's infertility is the product of abnormalities of the reproductive tract caused by her mother's ingestion of DES during pregnancy and that Mr. Rubel is fertile.

Dr. Jackman, another of plaintiff's treating physicians, testified that Mr. Rubel at one time had a low sperm count as a result of a condition that was corrected surgically in 1978 and that subsequent examination, which included post-coital tests, showed that Mr. Rubel was fertile.

3. Other experts called by plaintiff already have been examined as to their engagement by plaintiff. The absence of such an examination of Dr. Hembree would be conspicuous.

court had not erred in receiving former testimony of expert witnesses, albeit in circumstances that did not involve the special risk of prejudice inherent in calling one previously retained by the adversary, the Court said that unavailability of an expert witness does not alone justify receipt of the former testimony. "[T]here also should be showing ... that no other expert of similar qualifications is available or that the unavailable expert has some unique testimony to contribute." 474 F.2d at 536–37.

The balance here is affected also by the procedural posture. Plaintiff has known literally for years that the issue of her husband's alleged infertility is an important part of Lilly's defense. She has had a full opportunity to produce expert testimony on that subject from other sources. Hence, if Dr. Hembree in fact has something to contribute (apart from the fact of his retention by Lilly) that plaintiff has not adduced already from other experts, the failure is attributable to plaintiff and not to any inability to call Dr. Hembree.

Nor can plaintiff fairly be heard to argue that she relied upon the ability to obtain the evidence from Dr. Hembree. She did not list Dr. Hembree as a trial witness in the pretrial order. While she did list portions of his deposition, Lilly objected to receipt of that testimony at least six months before the start of the trial. In consequence, plaintiff knowingly took the risk that the testimony would not come in.

Given the length of time during which plaintiff has been aware of the issue addressed by Dr. Hembree's testimony, the lack of any justifiable reliance by plaintiff on the admissibility of Dr. Hembree's deposition or testimony, the apparent availability of other experts in the field, and the evidence on the point already adduced by plaintiff and the its overlap with Dr. Hembree's proposed testimony, we adhere to our prior ruling.[4] The prejudice to the defendant and the Court's interest in avoiding cumulative evi-

dence substantially outweigh any legitimate need—and we are not persuaded that there is any, at least at this point—for the testimony from this source. This ruling does not preclude a further application by plaintiff to use testimony of Dr. Hembree if that evidence proves to be appropriate, non-cumulative rebuttal to evidence offered by defendant on its case, although the considerations outlined here would remain relevant in that event.

SO ORDERED.

---

4. We recognize that the New York Court of Appeals' decision in *Gilly* cuts against the result we have reached here. This issue, however, is governed by federal rather that state law. The *Gilly* case, moreover, did not involve evidence that is entirely cumulative, or nearly so, save for the witness's prior engagement by the adversary, a circumstance that materially affects the balance here.