**MOORE U.S.A. INC., and Toppan Forms Co., Ltd., Plaintiffs,**

v.

**The STANDARD REGISTER COMPANY, Defendant.**

No. 98–CV–485C(F).

United States District Court, W.D. New York.

Sept. 7, 2001.

Nixon & Vanderhye P.C. (James D. Berquist, Esq., of Counsel), Arlington, VA, Cohen Swados Wright Hanifin Bradford & Brett (Laurence B. Oppenheimer, Esq., of Counsel), Buffalo, New York, for Plaintiffs.

Oblon, Spivak, McClelland, Maier & Neustadt, P.C. (Charles L. Gholz, Esq., of Counsel), Arlington, VA, Gibson, McAskill & Crosby (Brian P. Crosby, Esq., of Counsel), Buffalo, New York, for Defendants.

## INTRODUCTION

CURTIN, District Judge.

Presently before the court are Motions 13 and 14, or Items 203 and 234, which are plaintiff Moore North America, Inc.'s ("Moore") motion for a protective order and defendant Standard Register Company's ("SRC") related cross-motion to compel documents relating to Moore's relationship with Chemir/Polytech Laboratories, Inc. ("Chemir Labs"). The court heard oral argument on August 8, 2001.

## FACTUAL BACKGROUND

Moore filed this motion for a protective order in reaction to SRC's service of a Rule 45 subpoena on Chemir Labs. Item 203. Moore periodically employs Chemir Labs as an expert in connection with various patent infringement actions, as well as in connection with its ongoing business and research concerns.[1] SRC subsequently withdrew its Rule 45 subpoena, but renewed substantially the same demands in the context of this cross-motion to compel. Item 234. For the purposes of convenience, the court refers to the documents and testimony being sought from Moore as "the Chemir documents."

In support of its application, Moore has submitted selected pages of its privilege log, *see* Item 296, Exh. B, which include all "pages of the ... privilege log relating to Chemir ...." Item 296, p. 5, n. 1. In all, the selected pages of the privilege log itemize twenty-eight (28) documents. It appears that these 28 documents consist of analytical reports that Chemir Labs created for Moore or communications between Moore and Chemir Labs regarding "infringing pressure seal products" and "pressure seal litigation." Item 296, Exh. B. SRC complains that the privilege log fails to indicate which adhesives were the subject of analysis in any given document and also fails to indicate the specific lawsuit for which each document was created. *See* Item 235, p. 8.

While SRC's cross-motion to compel is obviously directed at Moore itself and not at Chemir Labs,[2] SRC clearly intends to serve another Rule 45 subpoena on Chemir Labs if it prevails on its cross-motion to compel. SRC suggests that there are three categories

---

1. In the memorandum of law supporting its motion for a protective order, Moore explains:

   Chemir [Labs] is a well-known testing laboratory located in Maryland Heights, Missouri qualified to perform a wide variety of analytical tests on materials in order to determine their structure and chemical composition. Moore has engaged Chemir on various occasions in the past to test and analyze compositions that Moore believes may be infringing one or more of its U.S. patents.

   Item 204, p. 1.

2. Chemir Labs is not a party to this action and thus would not be subject to a Rule 37 motion. *See generally* Fed.R.Civ.P. 37(a)(2)(B).

of discoverable Chemir documents: the Chemir documents relating to SRC adhesives; the Chemir documents relating to Moore adhesives; and the Chemir documents relating to other manufacturers' adhesives ("other adhesives"). *See* Item 235, p. 3.

## DISCUSSION

### I. Discoverability under Fed.R.Civ.P. 26(a)(1)

The recently revised Federal Rules of Civil Procedure describe the scope of discoverable information in the following way: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party .... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). The Federal Rules of Evidence describe "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. In light of these definitions and the policy favoring a broad scope of discovery, SRC insists that all three "categories" of Chemir documents are discoverable, *see supra* (describing three categories).

### A. Chemir Documents Relating to Other Adhesives

Taking the last category first, SRC contends that the Chemir documents relating to other adhesives will reveal the way in which Moore has wrongfully relied on test results from antiquated technologies, specifically the so-called "FTIR technology," as part of its blind and bad faith pursuit of infringement claims. *See* Item 235, p. 6. SRC speculates that the extensive detail of these Chemir documents will implicitly "discredit" Moore's reliance on deficient tests and findings.

■ The court rejects the idea that the Chemir documents relating to other adhesives are discoverable. If SRC desires to demonstrate the fallacy of Moore's reliance on certain technology and to show the deficiencies of certain test results, then SRC may have its own experts explain why Moore's proffered evidence is faulty. Further, the Chemir documents to which SRC has already gained access, *see* Item 235, pp. 6–7, nn. 10, 12, and 14 (indicating that Moore has made certain Chemir reports available to SRC for inspection), can provide SRC with the "examples" of thorough analysis and testing that SRC seeks to secure by this aspect of its motion. Granting relief to SRC with respect to these particular Chemir documents would advance the issues of this case little and would unreasonably and unnecessarily expand the scope of discoverable information. *See generally* Rule 26(b)(2).

### B. Chemir Documents Relating to Moore's and SRC's Adhesives

■ On the other hand, the Chemir documents are discoverable [3] to the extent that they relate to SRC's and/or Moore's adhesives. As to Chemir's analyses of SRC's adhesives, the related documents could show the ways in which SRC's adhesive is similar to and different from other pressure seal adhesives in the industry-including Moore's. As to Chemir's analyses of Moore's adhesives, the related documents could inform, among other things, the inquiry into whether Moore's adhesive is indeed "covered" by the '128 patent-an issue in which SRC is keenly interested. *See* Item 235, p. 4.

Barring some kind of protection or privilege, the Chemir documents that relate to SRC's and Moore's adhesives are discoverable. The issue to be resolved, then, is whether some protection or privilege applies.

### II. Fed.R.Civ.P. 26(b)(4)(B): Discovery from Non–Testifying Experts

■ Under Fed.R.Civ.P. 26(b)(4)(B), the facts known and opinions held by nontestifying experts who are retained or specially employed in anticipation of litigation or preparation for trial are subject to dis-

---

**3.** A finding of discoverability does not resolve the issue of whether the documents are protected or privileged. *See infra.*

covery only in exceptional circumstances. This Rule recognizes that with non-testifying experts, there is no need to obtain discovery for effective cross-examination.... The Rule is also designed to prevent a party from building his case on the diligent preparation of his adversary.

*Adams v. Shell Oil Co.*, 132 F.R.D. 437, 440 (E.D.La.1990) (citation omitted). Under Rule 26(b)(4)(B), a requesting party's burden of establishing "exceptional circumstances" has been described as a " 'heavy' one." *Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd.*, 154 F.R.D. 202, 208 (N.D.Ind. 1993) (quoting *Shell Oil*, 132 F.R.D. at 442). The rule is intended to allow litigants to consult experts in order to evaluate a claim "without fear that every consultation with an expert may yield-grist for the adversary's mill." *Rubel v. Eli Lilly and Co.*, 160 F.R.D. 458, 460 (S.D.N.Y.1995).

A. *Applicability of Rule 26(b)(4)(B)*

■ SRC offers several arguments as to why Chemir Labs cannot find protection under Rule 26(b)(4)(B) as a non-testifying expert retained in anticipation of litigation. First, SRC points out that Moore has previously identified Chemir Labs as a testifying expert in connection with other lawsuits and that the testimony that has been secured in those cases from Chemir Labs will most likely be proffered as evidence in those cases. *See* Item 235, p. 14. The court rejects this argument. The fact that Moore has identified Chemir Labs as a testifying expert in other actions has no bearing on whether Chemir Labs should be deemed either a testifying expert (or "trial expert") or a non-testifying expert (or "consulting expert") in this case. *Compare Bank of Brussels Lambert v. Chase Manhattan Bank*, 175 F.R.D. 34, 43 (S.D.N.Y.1997). Likewise, the fact that Moore has submitted certain Chemir reports in those unrelated actions does not foreclose Moore from claiming the protection of Rule 26(b)(4)(B) for other documents that were prepared in connection with and in anticipation of *this* litigation. *See id.* at 43–44.

Moreover, the court rejects SRC's suggestion that Moore bears the burden of establishing the fact that Chemir Labs is a non-testifying expert in this case. *See* Item 235, p. 14. In support of this proposition, SRC relies on *Cornelius v. Consolidated Rail Corp.*, 169 F.R.D. 250 (N.D.N.Y.1996). However, *Cornelius* is inapposite since that case dealt with the resisting party's burden to establish the three factors necessary to claim the work product privilege. *Id.* at 253.

■ While it is true that Moore has not yet designated Chemir Labs as a testifying or a non-testifying expert, neither has the court entered a scheduling order regarding a deadline for the disclosure of the parties' respective trial experts. "Until ... the court sets a date by which" Moore must decide whether to identify Chemir Labs as one of its trial experts, Moore "is entitled to the protection afforded by Rule 26(b)(4)(B)." *Bank of Brussels*, 175 F.R.D. at 43.

The only other potential issue is whether there is an indication that Chemir Labs was hired in anticipation of litigation. Given Moore's vigilant enforcement of the '128 patent in lawsuits throughout the country and the dates and subject matter summaries provided in the privilege log excerpts, *see* Item 296, Exh. B, the court has no hesitation in concluding that Chemir Labs was retained and the disputed Chemir documents were prepared in anticipation of this litigation.

■ The court should, however, clarify one point. Moore must produce those Chemir documents that it has already submitted in connection with other actions, such as those involving King, Central States, or Poser, to the extent that they are discoverable in this case. The court understands that Moore has already taken steps to make many of these reports available for SRC's inspection. *See* Item 235, pp. 6–7, nn. 10, 12, and 14. The court directs Moore to take the further step of actually producing the reports that have already been made available for inspection and, in the absence of good cause under Rule 26(b) or (c) of the Federal Rules of Civil Procedure, to produce the other Chemir reports that have been submitted in connection with these other actions.

## B. *Exceptional Circumstances*

■ SRC complains that it cannot replicate the work done by Chemir Labs because it does not know what batches or samples of SRC's and Moore's adhesives were tested by Chemir Labs. *See* Item 235, pp. 15–16. SRC insists that this inability to replicate the work done by Chemir Labs represents exceptional circumstances. The court rejects this argument and finds that there are no exceptional circumstances that would warrant discovery of the relevant Chemir documents. *See Bank of Brussels,* 175 F.R.D. at 44 (setting forth two general situations in which exceptional circumstances have been found).

First, there is no doubt that SRC has access to its own adhesives that Chemir Labs may have tested at Moore's direction. Further, SRC was free to propound discovery demands (and likely has done so) which demand samples of any and all Moore–Toppan adhesives.

SRC maintains that its securing samples of all relevant adhesives will not reveal *which* adhesives Moore actually chose to have tested by Chemir Labs. What SRC is describing here, though, is not an "inability" to replicate the work done by Chemir Labs, but an inability to learn of the decisions and choices that were made by Moore's counsel in requesting analyses from Chemir Labs. In seeking discovery of documents which evidence the precise adhesives that were tested by Moore's non-testifying expert, SRC seeks a window into Moore's litigation strategy and into Moore's ultimate theories on the case. This kind of information falls squarely under the heightened protections given to an attorney's core work product. *See generally Resolution Trust Corp. v. Massachusetts Mut. Life Ins. Co.,* 200 F.R.D. 183, 190 (W.D.N.Y. 2001).

## CONCLUSION

If Moore eventually names Chemir Labs as a testifying expert-and seeks to rely on certain reports that were prepared by Chemir Labs, then SRC, at that time, will have sufficient access to the relevant work that

Chemir Labs performed for Moore. Until then, there are no circumstances warranting an order compelling discovery of the relevant Chemir documents. For all of the reasons set forth herein, Moore's motion for a protective order as to the Chemir documents is granted in part and denied in part (Item 203), and SRC's related cross-motion to compel is denied in part and granted in part (Item 234).[4]

So ordered.

---

4. Moore's motion has been largely granted and SRC's motion largely denied. Still, the court reiterates that, absent good reason, Moore shall

produce those Chemir reports that have previously been submitted in connection with Moore's other infringement actions. *See supra.*