**R.C. OLMSTEAD, INC., Plaintiff,**

v.

**CU INTERFACE, LLC, et al., Defendants.**

**Case No. 5:08CV234.**

United States District Court, N.D. Ohio, Eastern Division.

March 5, 2009.

Daniel J. Clark, Vorys, Sater, Seymour & Pease, Columbus, OH, David A. Campbell, III, Vorys, Sater, Seymour & Pease, Cleveland, OH, for Plaintiff.

Andrew M. Holford, Columbus, OH, for Defendants.

## MEMORANDUM OPINION AND ORDER

SARA LIOI, District Judge.

This Memorandum Opinion and Order arises out of the motions of Defendants CU Interface, LLC; Canton School Employees Federal Credit Union ("CSE"); Software Properties LLC; and Thomas Burkhardt (collectively, "Defendants") to quash or modify the second subpoena of Craig Minch. (Doc. No. 109, 114.) Plaintiff R.C. Olmstead, Inc. ("RCO") filed an opposition (Doc. No. 123), and Defendants have filed a reply (Doc. No. 129). For the reasons that follow, Defendants' motion is **GRANTED.**[1]

## I. FACTUAL AND PROCEDURAL HISTORY

The factual and procedural history relevant to the disposition of this motion is as follows. RCO alleges, *inter alia,* that Defendants misappropriated RCO's trade secrets and improperly copied and created derivative works from RCO's RCO–1 software. (*See* Compl., Doc. No. 1.) In support of these claims, RCO offered an expert report of Robert Reid, a user interface expert who compared the interfaces of the RCO–1 and CUDP Circa 2005 softwares. (*See* Doc. No. 63 (Reid report).) On October 16, 2008, Defendants moved to strike Reid's report for, *inter alia,* failure to comply with Federal Rule of Civil Procedure 26(a)(2)(B). (Doc. No. 55.) This Court granted the motion on November 7, 2008. (Doc. No. 75.)

On October 24, 2008, Defendants filed a motion for modification of the case management order. (Doc. No. 61.) In the motion, Defendants represented that they did not intend to use any expert testimony for summary judgment practice, and thus requested that the Court extend the deadline for Defendants to identify experts and provide reports until 45 days after ruling on summary judgment motions.[2] (Doc.

---

1. Subsequent to the filing of this motion, on February 20, 209, RCO and CSE advised the Court that they had reached a settlement. As such, this motion is **MOOT** to the extent it pertains to CSE.

2. Defendants requested modification of the case management order in order to save any unnecessary costs. Defendants represented that they had identified four experts, in the fields of forensic data recovery, software originality, software comparison, and computer

No. 61 at 2–3.) RCO initially opposed the modification. (Doc. No. 64.)

On November 5, 2008, CSE filed a motion for a conference by telephone to discuss a discovery dispute. (Doc. No. 74.) The Court held a conference by telephone between counsel for all the parties on November 7, 2008, to discuss the dispute and Defendants' pending motion to modify the case management plan. (Minutes of Proceedings, 11/07/2008.) During the conference, attorney David Campbell ("Campbell"), counsel for RCO, stated that a workstation had already been set up for Defendants' expert, Craig Minch ("Minch"), to review the RCO–1 and CUDP Circa 2005 softwares, and that dismantling and rebuilding the station after summary judgment would create a burdensome expense. To alleviate the need to dismantle and reconstruct the workstation, Campbell suggested that Defendants provide an expert report by Minch by December 2, 2008, and all other expert reports for Defendant would be due by a date, to be established by the Court, sometime after the Court had ruled on the parties' pending summary judgment motions. (*Id.*) The Court and counsel for Defendants agreed to this accommodation. (*Id.*)

Shortly after Defendants provided RCO with Minch's report, RCO issued a Notice of Deposition scheduling Minch's deposition for the afternoon of December 18, 2008. (Doc. No. 98 at 2.) RCO's view was that Minch's deposition would yield evidence of similarities between the RCO–1 and CUDP Circa 2005 software interfaces, which in turn would provide probative evidence of copying. CSE objected on the grounds that RCO could not depose Minch until after the Court had ruled on the pending summary judgment motions.

(*Id.*) On December 23, 2008, this Court conducted a conference by telephone to attempt to resolve the dispute and to set a date for mediation. (Minutes of Proceedings, 12/23/2008.) No resolution was reached during the conference; accordingly, the Court ordered CSE to brief its position in the form of a motion to quash the subpoena of Minch, and RCO could file an opposition. (*Id.*) The parties have now done so, and the issue is thus ripe for this Court's review.

## II. LAW AND ANALYSIS

Defendants argue that the second subpoena to Minch should be quashed for two reasons: (1) RCO failed to serve the subpoena upon Defendants prior to serving it upon Minch, and (2) RCO may not depose Minch under Rule 26(b)(4)(B) because he is a non-testifying expert witness retained for purposes of litigation.

### A. Federal Rule 45(b)(1)

For a subpoena to any person, Rule 45(b)(1) contains the following requirements: (1) fees for mileage and one day's attendance for the deposition; and (2) if the subpoena commands production of documents, electronically stored information, or other tangible things, a notice must be served on each party before serving it on any non-party. Fed.R.Civ.P. 45(b)(1). Defendants concede that the second deposition to Minch satisfied the first requirement. (Second Mot. to Quash at 1 (noting that second subpoena contained a check for fees, and arguing only that the second subpoena was not served on opposing counsel upon issuance).) Meanwhile, the second provision is inapplicable. Defendants have never contended

---

security. (Doc. No. 61 at 3 n. 2.) Defendants suggested that, if the Court granted summary judgment in their favor, the cost of producing expert reports would be an unnecessary waste, since the expert reports would not be submitted during summary judgment practice anyway.

that the subpoena required that Minch produce anything. Further, even if Minch were required to produce something, the second requirement of Rule 45(b)(1) does not apply for subpoenas compelling attendance at a deposition, even if production is requested at the deposition. Fed. R.Civ.P. 45, Advisory Committee Notes (1991). Thus, the subpoena complies with Rule 45(b)(1).

## B. Rule 26(b)(4)(B)

Rule 26(b)(4)(A) states that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial." Fed.R.Civ.P. 26(b)(4)(A). Where an expert is "specifically employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as witness," however, a party may only depose that expert upon a showing of "exceptional circumstances." Fed.R.Civ.P. 26(b)(4)(B). RCO contends that it may depose Minch because Minch is a "testify-

ing" expert witness under Rule 26(b)(4)(A). CSE, meanwhile, has "designate[d]" Minch as a non-testifying expert witness in light of the fact that Minch's report will not be used in CSE's summary judgment briefing (CSE Mem. Supp. Mot. to Quash at 5 n. 2), and now argues that RCO cannot depose Minch because he is a non-testifying expert protected under Rule 26(b)(4)(B).

The issue before the Court is whether an expert initially designated as a testifying expert witness, but later designated as a non-testifying expert after disclosing his report, may be deposed by the opposing party.[3] The cases addressing this precise issue follow two lines of authority. The overwhelming majority of courts hold that a party may re-designate an expert as non-testifying, and that this insulates the expert from deposition by other parties absent a showing of "exceptional circumstances" under Rule 26(b)(4)(B). *See In re Shell Oil Refinery*, 132 F.R.D. 437, 440 (E.D.La.1990);[4] *FMC Corp. v. Vendo Co.*,

---

**3.** Several courts have dealt with the issue of whether an expert is subject to deposition if he is redesignated as a non-testifying expert before disclosure of his opinions. With the lone exception of *House v. Combined Ins. Co. of Am.*, 168 F.R.D. 236 (N.D.Iowa 1996), the courts are uniform in holding that such experts are not subject to deposition. *Dayton–Phoenix Grp., Inc. v. Gen. Motors Corp.*, 1997 WL 1764760, at *1–2 (S.D.Ohio Feb. 19, 1997); *In re Manship*, 240 F.R.D. 229, 236–37 (M.D.La.2006); *Vanguard Sav. and Loan Ass'n v. Banks*, 1995 WL 71293, at *3 (E.D.Pa. Feb. 17, 1995); *Ross v. Burlington N. R.R. Co.*, 136 F.R.D. 638, 638–39 (N.D.Ill. 1991).

    *Rubel v. Eli Lilly and Co.*, 160 F.R.D. 458 (S.D.N.Y.1995), also discussed the interplay between Rules 26(b)(4)(A) and (B), but *Rubel* is not particularly relevant because there the deposition of the expert had already occurred—the issue was whether the testimony could be presented at trial. *Id.* at 460. Additionally, *Crowe v. Nivison*, 145 F.R.D. 657, 657 (D.Md.1993), held that, notwithstanding Rule 26(b)(4)(B), submission to a Rule 35

medical examination entitled the examined party to a report of the examination and a deposition of the expert witness. This case, however, does not involve a Rule 35 medical examination.

**4.** *Shell Oil* held that a party could change the designation of a witness from testifying to non-testifying any time before the court-imposed deadline for exchange of witness lists. *Shell Oil*, 132 F.R.D. at 440. The court reasoned that "[t]hose who will testify at trial often cannot be identified until later stages of litigation," and thus a party should be able to change its classification of witnesses any time before the exchange of witness lists. *Id.* (citations omitted). A later case from the Eastern District of Louisiana, *Comm. & Ind. Ins. Co. v. Grinnell Corp.*, 1999 WL 731410, at *2 (E.D.La.1999), allowed an opposing party to depose the expert of a party dismissed from the case on summary judgment on the grounds that the witness list had already been exchanged. In this case, the parties are not bound to submit witness lists until three days before the final pre-trial conference, which has yet to occur; thus, *Grinnell* is inapposite.

196 F.Supp.2d 1023, 1046 (E.D.Cal.2002); *Callaway Golf Co. v. Dunlop Slazenger Grp. Ams., Inc.,* 2002 WL 1906628, at *3 (D.Del. Aug. 14, 2002); *Employer's Reins. Corp. v. Clarendon Nat'l Ins. Co.,* 213 F.R.D. 422, 426 n. 11 (D.Kan.2003); *Fed. Ins. Co. v. St. Paul Fire and Marine Ins. Co.,* 2008 WL 761417, at *3 (N.D.Cal. Mar. 19, 2008); *Green v. Nygaard,* 213 Ariz. 460, 143 P.3d 393, 397 (2006).[5] None of the courts in these cases found exceptional circumstances justifying a deposition of the expert(s) of an opposing party.

The lone case of *House v. Combined Ins. Co. of Am.,* 168 F.R.D. 236 (N.D.Iowa 1996), represents the minority approach. *House* found a significant distinction between witnesses formerly designated as a testifying expert under Rule 26(b)(4)(A) but later designated as non-testifying, and witnesses never designated as testifying. *Id.* at 245. The court noted that neither of these types of witnesses fell under Rule 26(b)(4)(A), since they were designated as non-testifying. *Id.* at 246. The court held, however, that two types were governed by different standards. Witnesses never designated as testifying experts under Rule 26(b)(4)(A) were subject to the familiar "exceptional circumstances" standard under Rule 26(b)(4)(B). *Id.* at 245. Witnesses that were designated as testifying experts under Rule 26(b)(4)(A) but later redesignated as non-testifying, however, were governed by a balancing test similar to Federal Rule of Evidence 403. *Id.* at 245–46. Thus, in *House,* the court determined that an expert for defendant conducting a Rule 35 medical examination of plaintiff, even though subsequently designated non-testifying by defendant, could be deposed by plaintiff's counsel. *Id.* at 246–48.

Predictably, RCO cites to *House,* whereas CSE argues that this Court should adopt the "exceptional circumstances" standard of Rule 26(b)(4)(B). It is somewhat odd that RCO cites to *House,* given that *House* rejected RCO's argument that an expert designated as testifying under Rule 26(b)(4)(A) remains governed by that rule even if the party attempts to redesignate that expert as non-testifying. *Id.* at 246. But even construing RCO's opposition memorandum as inviting this Court to adopt the balancing test in *House,* the Court nonetheless declines to do so for several reasons. First, the principal reasoning of *House* is inconsistent with Sixth Circuit precedent. Underlying *House*'s holding was an assumption that plaintiff could call defendant's expert as her own witness. *Id.* at 248. Thus, *House* "allow[ed] the pretrial deposition of [defendant's expert] in order to preserve his testimony for trial, should he be unavailable at that time for any reason." *Id.* (footnotes omitted). The Sixth Circuit, however, generally forbids a party from calling the opposing party's expert as a witness at trial, even if the opposing party does not intend to use that expert. *Zvolensky v. Ametek, Inc.,* 142 F.3d 438 (Table), 1998 WL 124047, at *2 (6th Cir. Mar. 12, 1998) (per curiam) (citing *Durflinger v. Artiles,* 727 F.2d 888, 891 (10th Cir.1984)).

Additionally, *House* was decided in the context of a Rule 35 expert examination, where the court noted that the "kind of reliance" created by "submission to a [Rule 35] medical examination by the designated expert" constituted a substantial reason for allowing the medical examiner to be deposed, even after being designated a non-testifying expert. *House,* 168 F.R.D. at 246. Accordingly, many courts have distinguished *House* on its facts, viewing *House* as only applying to Rule 35 experts. *See Green v. Nygaard,* 213 Ariz. 460, 143

---

**5.** It is worth noting that the parties do not cite to any of these cases in their briefing. RCO only cites *House,* and CSE cites a handful of cases listed in footnote 2, *supra.*

P.3d 393, 397 n. 4 (Ariz.App.Div.2006) (citing cases and noting distinctions). Indeed, no court appears to have adopted the *House* standard in a non-Rule 35 context.

Finally, the Court finds that the intent behind the Federal Rules of Civil Procedure is better served by the majority rule. The purpose of Rule 26(b)(4)(A) is to ensure that parties can properly prepare for cross-examination of expert witness at trial. Fed.R.Civ.P. 26, Advisory Committee Notes (1970); *Dayton–Phoenix,* 1997 WL 1764760, at *1; *Bailey v. Meister Brau, Inc.,* 57 F.R.D. 11, 13–14 (N.D.Ill.1972). Rule 26(b)(4)(B), meanwhile, is intended to prevent the unfairness of allowing one party to benefit from the opposing party's trial preparation. Fed.R.Civ.P. 26, Advisory Committee Notes (1970); *Shell Oil,* 132 F.R.D. at 440; *Dayton–Phoenix,* 1997 WL 1764760, at *1; *Banks,* 1995 WL 71293, at *2; *Wolt v. Sherwood,* 828 F.Supp. 1562, 1568 (D.Utah 1993); *Nygaard,* 143 P.3d at 397. "A party must as a practical matter prepare his own case in advance of [disclosure of experts and reports], for he can hardly hope to build his case out of his opponent's experts." Fed.R.Civ.P. 26, Advisory Committee Notes (1970).

As noted earlier, the Sixth Circuit does not allow a party to call another party's expert as a witness. *Zvolensky,* 1998 WL 124047, at *2. Further, where an expert is non-testifying, there is no need to prepare for cross-examination of that expert. Thus, permitting the deposition of a non-testifying expert witness only can result in enabling a party to build his case on the back of the opposing party's retaining and financing an expert. This strikes at the heart of the fairness doctrine inherent in Rule 26(b)(4) and is precisely the reason why most courts demand that a party

seeking to depose non-testifying experts show exceptional circumstances. The *House* balancing test, meanwhile, mirrors that of Evidence Rule 403, *House,* 168 F.R.D. at 246, which is a very "narrow" exception to the "broad rule of admissibility." *See United States v. Moore,* 917 F.2d 215, 233 (6th Cir.1990); Fed. R. Ev. 403 ("[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice [...].""). This rule would exclude depositions of non-testifying experts only in very limited circumstances, and generally would allow a party to build his case from the trial preparation of an opposing party.

■ Accordingly, this Court adopts the majority rule and holds that, where a party identifies an expert as testifying under Rule 26(b)(4)(A), but subsequently redesignates the expert as non-testifying, the opposing party may only depose that expert upon a showing of "exceptional circumstances" under Rule 26(b)(4)(B).[6] The opposing party can show exceptional circumstances where "it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed.R.Civ.P. 26(b)(4)(B)(ii). Examples of this would include evidence deteriorating after a party's non-testifying expert observes it but before the opposing party has an opportunity to observe it, or if there are no other available experts in the same field or subject area. *See Spearman Ind. v. St. Paul Fire & Marine Ins. Co.,* 128 F.Supp.2d 1148, 1151 (N.D.Ill.2001).

■ RCO has not shown exceptional circumstances justifying a need to take Minch's deposition. Defendants do not cite Minch's report or findings in any of the pending summary judgment motions,

---

**6.** If Rule 35 applies, Rule 26(b)(4)(B) also allows deposing an expert as provided in Rule 35(b).

and so there is no need to rebut Minch's findings at the present time. RCO had ample time to designate its own experts to compare the RCO–1 and CUDP Circa 2005 softwares; it designated a single expert to review the software and provided a report that failed to comply with Rule 26(a)(2)(B). Lack of diligence is not a sufficient justification for deposing an opposing party's non-testifying expert. *FMC*, 196 F.Supp.2d at 1047.

Moreover, allowing RCO to depose Minch would implicate the precise evils that Rule 26(b)(4) was intended to prevent. At present, RCO has no direct comparative evidence of similarities between the RCO–1 and CUDP Circa 2005 interfaces. It now seeks to depose Minch to uncover evidence of similarities.[7] As noted earlier, Rule 26(b)(4)(B) was created to prevent a party from unfairly benefiting from another party's better trial preparation or unfairly using another party's expert to build his own case. Fed.R.Civ.P. 26, Advisory Committee Notes (1970); *Shell Oil*, 132 F.R.D. at 440; *Dayton–Phoenix*, 1997 WL 1764760, at *1; *Banks*, 1995 WL 71293, at *2; *Wolt v. Sherwood*, 828 F.Supp. 1562, 1568 (D.Utah 1993); *Nygaard*, 143 P.3d at 397. Thus, RCO cannot be permitted to depose Minch.

---

7. RCO intimates that the earlier disclosure date for Minch's report was based on the particular relevance of his report to summary judgment practice, and thus he is susceptible to deposition. (*See* RCO Mem. Opp. Mot. to Quash at 5–6.) The purpose for requiring Minch to be disclosed earlier than the other experts was so that RCO would not have to incur a needless expense dismantling and then reassembling a workstation. It was never suggested during the conference by telephone with the Court that Minch would be subject to deposition as a result of this arrangement.

RCO also suggests that CSE should not be permitted to redesignate Minch as a non-

## III. CONCLUSION

For the foregoing reasons, Defendants' joint motion to quash the subpoena of Craig Minch is **GRANTED**. RCO may not depose Minch unless and until Minch is designated a testifying expert witness.[8]

**IT IS SO ORDERED.**

testifying expert because RCO never agreed to allow such a redesignation. (RCO Mem. Opp. Mot. to Quash at 5.) The Court finds RCO's rather audacious contention highly unpersuasive. During the conference with the Court, RCO never suggested that its agreement to modifying the case management order was premised upon Minch being designated a testifying expert under Rule 26(b)(4)(A), and CSE never agreed to redesignate Minch only with permission.

8. In the event Minch is redesignated as a testifying expert witness but RCO is not given an adequate opportunity to depose him before trial, the Court will consider an appropriate motion at that time.