**Jody Renae HOUSE, Plaintiff,**

v.

**COMBINED INSURANCE COMPANY OF AMERICA and Bola Olorundami, Defendants.**

**No. C 95–4032–MWB.**

United States District Court, N.D. Iowa, Western Division.

July 31, 1996.

Margaret Prahl and Sabra Craig of Eidsmoe, Heidman, Redmond, Fredregill, Patterson, Schatz & Plaza, L.L.P., Sioux City, Iowa, for Plaintiff Jody House.

Christopher Harristhal and John Steffenhagen of Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, Minnesota, for Defendant Combined Insurance.

Douglas Phillips of Klass, Hanks, Stoos, Stoik, Villone & Phillips, L.L.P., Sioux City, Iowa, for Defendant Bola Olorundami.

### ORDER REGARDING TESTIMONY OF DR. TAYLOR

BENNETT, District Judge.

TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .238

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .240
    A.    Applicable Standards And Pertinent Circumstances . . . . . . . . . . . . . . . . . .240
        1. The "exceptional circumstances" standard . . . . . . . . . . . . . . . . . . . . . . .240
        2. "Balancing" or "discretionary" standards . . . . . . . . . . . . . . . . . . . . . . .242
        3. The "entitlement" standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .244
    B.    The Proper Standard Here . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .245
        1. "Entitlement," "balancing," or "exceptional circumstances"? . . . . . . .245
        2. The balance here . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .247

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .249

One of several motions in limine filed by the parties in this sexual harassment lawsuit presents the vexing and surprisingly little explored question of whether one party should be able to depose or call at trial an expert designated by an opposing party as expected to be called at trial, but whom the designating party has announced it will not call at trial. Despite the infrequency with which courts have apparently confronted this question, they have nonetheless postulated no less than three different standards for answering it. The defendant contends that the plaintiff should not be allowed to call a non-testifying defense expert, because no "exceptional circumstances" are presented. Plaintiff contends that defense counsel is attempting to suppress an expert witness previously designated to testify at trial, but whose testimony defendant has now learned will be favorable to plaintiff. Plaintiff therefore contends that she is entitled to present defendant's erstwhile expert, at a minimum, to lay a foundation for his report. Trial of this matter is scheduled to begin August 5, 1996. The court heard oral arguments on all of the motions in limine on July 25, 1996, but the present ruling concerns only the expert witness issue.[1]

## I. INTRODUCTION AND BACKGROUND

The court's statement of the background for this ruling must perforce be brief. Plaintiff Jody House brought this lawsuit on April 18, 1995, asserting claims of quid pro quo sexual harassment, creation of a sexually hostile work environment, and retaliation for opposing unlawful employment practices pursuant to 42 U.S.C. § 2000e *et seq.* Defendants are her former employer, Combined Insurance Company of America, and her supervisor, and alleged harasser, Bola Olorundami. The nature of House's factual allegations is not critical to the present ruling,

although her assertion of a claim for damages for emotional distress is pertinent, because the present dispute involves whether House may depose prior to trial and may call as a witness at trial an expert originally designated by defendant Combined, Dr. Michael J. Taylor, who is a psychiatrist.

On March 15, 1996, House designated her expert witnesses pursuant to court order and *Fed.R.Civ.P.* 26(b)(4)(A). Her expert witness on House's emotional distress allegedly suffered as a result of defendants' conduct is a social worker, Jennifer Burrows. Combined contends that the initial designation of Ms. Burrows was so vague that Combined was unable to tell the nature of Ms. Burrows's testimony.[2] Therefore, Combined contends, in order to rebut whatever testimony Ms. Burrows might present, Combined designated Dr. Taylor as its expert on May 2, 1996.

Dr. Taylor first examined House on June 5, 1996, more than a month after he had been designated as an expert expected to testify at trial. House subsequently noticed Dr. Taylor's deposition and moved to compel production of Dr. Taylor's report on his examination of House. In response, Combined moved to quash the deposition of Dr. Taylor and for a protective order precluding any discovery from Dr. Taylor on the ground that Combined had decided not to call Dr. Taylor as a witness at trial. Combined has never formally withdrawn its designation of Dr. Taylor as an expert expected to be called at trial. However, Dr. Taylor has been dropped from defendant's witness list in the final pretrial order filed July 19, 1996, and Combined has represented to the court, both in proceedings before Chief Magistrate Judge John A. Jarvey and the undersigned, that it has no intention of calling Dr. Taylor at trial. On July 2, 1996, Judge Jarvey ruled that, pursuant to *Fed.R.Civ.P.* 35(b), House was entitled to Dr. Taylor's report. However, the magistrate

---

1. Other issues, though no less complicated than the present one, will not require as much last-minute pretrial preparation by the parties, whichever way they are resolved. Therefore, they will be addressed in a separate ruling, if necessary, after the parties complete a settlement conference scheduled for July 30, 1996.

2. However, House's counsel contended that defendants had available to them from late in 1995 all of Ms. Burrows's records concerning House, so that her opinions and testimony were unlikely to surprise anyone.

judge concluded that, pursuant to *Fed. R.Civ.P.* 26(b)(4)(B), an expert employed in anticipation of litigation who is not expected to be called as a witness at trial can be deposed only upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject matter by other means, and that no such exceptional circumstances had been shown. In reaching this conclusion, Judge Jarvey cited, *inter alia,* the undersigned's opinion in *Brown v. Ringstad,* 142 F.R.D. 461 (S.D.Iowa 1992).

In its motion in limine, filed on June 27, 1996, Combined again moved to bar House from calling Dr. Taylor at trial. House resisted the exclusion of Dr. Taylor's testimony. The court held oral arguments on this and the other issues raised in the parties' motions in limine on July 25, 1996. The court found both the written and oral arguments on this difficult issue to be particularly well presented. At the oral arguments, plaintiff House was represented by counsel Margaret Prahl and Sabra Craig of Eidsmoe, Heidman, Redmond, Fredregill, Patterson, Schatz & Plaza, L.L.P., in Sioux City, Iowa. Defendant Combined was represented by counsel Christopher Harristhal and John Steffenhagen of Larkin, Hoffman, Daly & Lindgren, Ltd., in Bloomington, Minnesota. Defendant Bola Olorundami was represented by counsel Douglas Phillips of Klass, Hanks, Stoos, Stoik, Villone & Phillips, L.L.P., in Sioux City, Iowa.

In the same motion in which it moved to preclude House from calling Dr. Taylor, Combined also moved to strike House's experts on the grounds of late and inadequate identification of the substance of their testimony. As to Dr. Taylor, Combined stated that, since House still has not provided adequate expert disclosures and Combined seeks exclusion of expert testimony as a sanction, Combined has indicated that it will not call Dr. Taylor as a witness.[3] Combined argues that allowing House to use Dr. Taylor as a

witness would be anomalous if House's own experts are stricken. Combined also argued that the situation here is analogous to that addressed in *Brown v. Ringstad,* and that the rationale for precluding a party from calling an opposing party's non-testifying expert at trial is even stronger than the rationale for barring a party from deposing such a non-testifying expert. At the oral arguments on the motions in limine, Combined further argued that other state cases supported its position, but that the federal cases cited by House in her brief in resistance to the motions in limine did not permit the full scope of trial testimony by one party's expert when called by the opposing party Combined fears House contemplates here. Furthermore, Combined argued that *Durflinger v. Artiles,* 727 F.2d 888 (10th Cir.1984), stood for the proposition that only exceptional circumstances would permit a party to call an opposing party's expert witness at trial, and that no such exceptional circumstances had been shown here.

In House's written resistance to that part of the motion in limine seeking to prevent her from calling Dr. Taylor, House contended that she should be allowed to call Dr. Taylor to lay a foundation for his report. House argued that she was absolutely entitled to this report pursuant to *Fed.R.Civ.P.* 35(b) and *Salvatore v. American Cyanamid Co.,* 94 F.R.D. 156 (D.R.I.1982), and that the decisions in *Fitzpatrick v. Holiday Inns, Inc.,* 507 F.Supp. 979 (E.D.Penn.1981), and *Crowe v. Nivison,* 145 F.R.D. 657 (D.Md. 1993), established her right to call Dr. Taylor to lay a foundation for introduction of his report. At oral arguments, having now received a copy of Dr. Taylor's report pursuant to Judge Jarvey's order, House expanded her argument, asserting that *Fitzpatrick* and *Crowe* stand for the broader proposition that a party is entitled to call at trial an opposing party's expert who has conducted a medical examination of the party. House's counsel specifically alleged that Combined's purpose

---

**3.** The court finds this explanation of why Combined no longer wishes to call Dr. Taylor to be disingenuous at best. The court believes the more plausible explanation for why Combined no longer wishes to call Dr. Taylor is that suggested by Judge Jarvey: "Apparently, Dr. Taylor's opin-

ions must not be favorable to the defendants' position because they do not want to produce a copy of Dr. Taylor's report and have stated that they will not call him as a witness at trial." Order of July 2, 1996, p. 2.

in seeking to exclude testimony by Dr. Taylor was to suppress evidence favorable to House.

During the oral arguments, the court issued an oral ruling that House would be permitted to depose Dr. Taylor prior to trial, if she desired to take that step. However, the court reserved for a subsequent written ruling the question of whether House would be able to present Dr. Taylor's testimony, either live or by deposition, at the trial. The court now provides that written ruling.

## II. LEGAL ANALYSIS

Examination of the pertinent case law, of which there is surprisingly little, suggests that courts have applied three different standards to the question of whether a party should have access to and be able to use at trial an expert hired by the opposing party. Moving from least to most permissive, the first of those standards is an "exceptional circumstances" standard founded on *Fed. R.Civ.P.* 26(b)(4)(B). The second standard is articulated in the most recent of the decisions to discuss the question, *Peterson v. Willie,* 81 F.3d 1033 (11th Cir.1996), which despite their capable briefing and argument the parties did not discover, although, in some respects, it is more directly on point than any of the decisions cited by the parties. *Peterson* suggests a "discretionary" or "balancing" standard, involving a balancing of the interests of the party and the court against the potential for prejudice to the party who hired the expert, but who does not wish to use that expert at trial. The third, and most permissive standard, is based upon a few cases finding an "entitlement" to call an opposing party's expert under certain circumstances, despite the opposing party's desire *not* to have the expert testify. The court finds that these differing standards arise in three different procedural postures and sets of circumstances. This court's somewhat daunting task is to identify the situations in which these standards have each been applied, whether the situations actually require different standards, and, finally, to determine what circumstances are present here and which standard should apply in these circumstances.

### A. Applicable Standards And Pertinent Circumstances

#### 1. The "exceptional circumstances" standard

The "exceptional circumstances" standard, asserted here by Combined, finds its authority in *Fed.R.Civ.P.* 26(b)(4)(B), which provides as follows:

> A party *may,* through interrogatories or by deposition, *discover facts known or opinions held by an expert* who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and *who is not expected to be called as a witness at trial, only as provided in Rule 35(b)* or *upon a showing of exceptional circumstances* under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

*Fed.R.Civ.P.* 26(b)(4)(B) (emphasis added). The circumstances under which discovery is obtainable from an expert consulted, but not expected to be called at trial, must be contrasted with the provisions of Rule 26(b)(4)(A), which provides for discovery from an expert who *is* expected to be presented at trial:

> A party *may depose any* person who has been identified as an *expert whose opinions may be presented at trial.*

*Fed.R.Civ.P.* 26(b)(4)(A) (emphasis added). Although commentators and courts have generally recognized four classes of experts created by Rule 26, and the limits on discovery or trial testimony that may be elicited from experts in each of these classes,[4] this case

---

4. For example, the Tenth Circuit Court of Appeals in *Ager v. Jane C. Stormont Hosp. & Training Sch. for Nurses,* 622 F.2d 496 (1980), adopted the four classifications of commentators Wright and Miller:

(1) Experts a party expects to use at trial. The opponent may learn by interrogatories the names of these trial witnesses and the substance of their testimony but further discovery concerning them can be had only on motion and court order.

(2) Experts retained or specially employed in anticipation of litigation or preparation for trial but not expected to be used at trial. Ex-

involves a fifth class of experts: Experts once designated as likely to testify at trial, but whose designation is subsequently withdrawn.

Combined asserts that this fifth class of experts should be treated like consulted-but-not-testifying experts. Discovery from such experts is generally precluded, except upon a showing of "exceptional circumstances." Fed.R.Civ.P. 26(b)(4)(B). The rule on access to a consulted-but-not-testifying expert serves a number of interests, as identified by the United States District Court for the Southern District of New York in *Rubel v. Eli Lilly & Co.*, 160 F.R.D. 458, 460 (S.D.N.Y.1995). The district court recognized four interests weighing against allowing an opposing party to depose or call at trial a consultative, non-testifying expert witness: (1) an "important interest in allowing counsel to obtain the expert advice they need in order properly to evaluate and present their clients' position without fear that every consultation with an expert may yield grist for the adversary's mill," which the court found underlies *Fed.R.Civ.P.* 26(b)(4)(B)'s limitation on discovery of consultative, as opposed to testifying, experts; (2) unfairness of allowing an opposing party to benefit from a party's effort and expense incurred in preparing its case; (3) fear of restraint on the willingness of experts to serve as consultants if their testimony could be compelled; and (4) the substantial risk of "explosive" prejudice stemming from the fact of the prior retention of an expert by the opposing party. *Rubel*, 160 F.R.D. at 460; *see also Rocky Mountain Natural Gas Co. v. Cooper Indus., Inc.*, 166 F.R.D. 481, 482 (D.Colo.1996) (" [Rule 26(b)(4)(B) ] is designed to promote fairness by precluding unreasonable access to an opposing party's diligent trial prepara-

tion,' " quoting *Durflinger v. Artiles*, 727 F.2d 888, 891 (10th Cir.1984)); *In re Shell Oil Refinery*, 132 F.R.D. 437, 440 (E.D.La. 1990) (quoting the Advisory Committee Notes to Rule 26, which state that "[t]he procedure established in subsection (b)(4)(A) holds the risk [that one side will benefit unduly from the other side's better preparation] to a minimum. Discovery is limited to trial witnesses, and *may be obtained only at a time when the parties know who their expert will be. A party must as a practical matter prepare his own case in advance of that time, for he can hardly hope to build his case out of his opponent's expertise*," with emphasis added by that court, which further noted that "Rule [26(b)(4)(B) ] is also designed to prevent a party from building his case on the diligent preparation of his adversary").

In *Durflinger v. Artiles*, 727 F.2d 888 (10th Cir.1984), the Tenth Circuit Court of Appeals found these and similar interests protected by Rule 26(b)(4)(B) to be dispositive of the question of whether one party could call an expert originally designated by an opposing party, but as to whom the opposing party had subsequently withdrawn its designation of intention to use at trial. *Durflinger*, 727 F.2d at 891. In *Durflinger*, the Tenth Circuit Court of Appeals held that the party who sought to present the expert's testimony at trial had "violated" *Fed.R.Civ.P.* 26(b)(4)(B), because it had hired the opposing party's expert, knowing he had been previously retained then dropped by that opposing party, but had not shown the court any "exceptional circumstances" for employing the expert. *Id.* The court found defendants' conduct objectionable, because the expert had formed

cept as provided in rule 35 for an examining physician, the facts and opinions of experts in this category can be discovered only on a showing of exceptional circumstances.

(3) Experts informally consulted in preparation for trial but not retained. No discovery may be had of the names or views of experts in this category.

(4) Experts whose information was not acquired in preparation for trial. This class, which includes both regular employees of a party not specially employed on the case and also experts who were actors or viewers of the

occurrences that gave rise to the suit, is not included within Rule 26(b)(4) at all and facts and opinions they have are freely discoverable as with any ordinary witness. [Footnotes omitted].

Wright & Miller, *Federal Practice and Procedure:* Civil § 2029[.]

*Ager*, 622 F.2d at 500–01; *see also Healy v. Counts*, 100 F.R.D. 493, 495–96 (D.Colo.1984) (noting Wright and Miller's four categories of experts as articulated in *Ager*, but finding that its case involved only two of the categories, the second and third).

his opinion on the basis of information furnished to him by the plaintiffs, the expert had been paid for his services by the plaintiffs, and the defendants had an expert testifying on the same psychological principles and procedures and could probably have obtained others. *Id.*

Another decision, that of the United States District Court for the Eastern District of Louisiana, *In re Shell Oil Refinery*, 132 F.R.D. 437 (E.D.La.1990), suggests that *prior to the deadline for designation as an expert witness* expected to be called at trial pursuant to Rule 26(b)(4)(A), a party may notify the opposing party that an expert will not be testifying, even if the party has previously disclosed expert witness reports of that expert. *In re Shell Oil Refinery*, 132 F.R.D. at 440. The court therefore barred an opposing party from attempting to obtain discovery from certain experts until and unless those experts were designated as expected to be called at trial. *Id.*

Implicit in the decision in *Durflinger*, 727 F.2d at 891, is the assumption that whenever a party decides not to use at trial an expert it has consulted, the "not expected to be called as a witness" provisions of Rule 26(b)(4)(B) come into play. The decision in *In re Shell Oil* suggests that a party may change anticipated witnesses to non-witnesses up until the court-imposed deadline for exchange of witness lists, although the court in that case did not actually have before it a case in which a previous designation of an expert witness had been withdrawn at the time of the exchange of witness lists. *In re Shell Oil Refinery*, 132 F.R.D. at 437. Instead, the decision in that case was rendered prior to the deadline for any party to designate any expert witnesses as expected to be called at trial. *Id.* at 440. Other courts do not adhere to these assumptions, finding that there are situations in which the "exceptional circumstances" standard of Rule 26(b)(4)(B) is not applicable to a never-designated expert or one whose designation as likely to testify at trial has been withdrawn. The decisions of these courts are discussed in the following sections.

### 2. "Balancing" or "discretionary" standards

Other courts have identified circumstances in which they find that the "exceptional circumstances" standard of Rule 26(b)(4)(B) does not apply, even though a party now has a present intention not to use at trial an expert it had consulted, or even designated as likely to be used at trial under Rule 26(b)(4)(A). The most recent of such cases is *Peterson v. Willie*, 81 F.3d 1033 (11th Cir. 1996). In *Peterson*, the Eleventh Circuit Court of Appeals considered a situation in which the plaintiff, through former counsel, had designated a psychiatrist as an expert witness expected to testify at trial pursuant to *Fed.R.Civ.P.* 26(b)(4)(A)(i). *Peterson*, 81 F.3d at 1036. Defendants then noticed the deposition of the expert, to which the plaintiff offered no objection. *Id.* Shortly before the scheduled deposition, without the knowledge of plaintiff's counsel, the expert re-examined the plaintiff. *Id.* At depositions, the expert testified that, as a result of his second examination, his opinion concerning the matters at issue had changed. *Id.* After the deposition, plaintiff's new counsel withdrew the designation of the expert as a trial expert and filed a motion in limine seeking to preclude the expert from testifying on behalf of the opposing parties. *Id.* The district court permitted the expert to testify concerning his opinion on the case and to testify that he had previously been retained by the plaintiff's former attorney. *Id.* at 1036–37. The Eleventh Circuit Court of Appeals therefore was required to address whether it was permissible for the expert, designated by one party, but not called by that party, to be called as an expert witness by the opposing party, as well as whether it was permissible for the jury to be informed that the expert had previously been retained by the other party. *Id.* at 1037.

In *Peterson*, the plaintiff argued that one of the opposing parties' reasons for calling the expert was to inform the jury that the expert had originally been hired by plaintiff's counsel, but had been withdrawn when counsel disagreed with his opinion, *i.e.*, to suggest that "something was being hidden" from the

jury by the counsel who hired the expert.[5] *Id.* House has asserted as an argument for permitting her to offer Dr. Taylor's testimony the assertion that Combined is trying to hide Dr. Taylor's opinion from House and the jury.

However, the court in *Peterson* recognized the prejudice that results from informing the jury that an expert had originally been consulted by the opposing party. *Id.* (citing *Healy v. Counts,* 100 F.R.D. 493 (D.Colo. 1984), and *Granger v. Wisner,* 134 Ariz. 377, 656 P.2d 1238, 1242 (1982)). The Eleventh Circuit Court of Appeals quoted the following observation with approval:

> Jurors unfamiliar with the role of counsel in adversary proceedings might well assume that plaintiff's counsel had suppressed evidence which he had an obligation to offer. Such a reaction could destroy counsel's credibility in the eyes of the jury.

*Id.* (quoting *Granger,* 134 Ariz. 377, 656 P.2d at 1242). The court cited other authorities describing as "explosive" the potential prejudicial effect of disclosing that the expert called by one party had originally been hired by an opposing party. *Id.* (citing *Rubel,* 160 F.R.D. at 460, and 8 CHARLES A. WRIGHT, ARTHUR R. MILLER, AND RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2032, at 447 (1994)). The appellate court therefore concluded that the district court had erred in allowing disclosure of the fact that the expert testifying at trial had originally been hired by the opposing party. *Id.* at 1038. This court also recognizes the significant potential prejudice of informing the jury that the expert presently testifying for one party was originally designated, retained, or consulted by the opposing party.

However, the court in *Peterson* also recognized that courts had split on the more fundamental question of whether one party

should be allowed to call an expert originally consulted by the opposing party. *Id.* at 1037 (citing *Granger,* 656 P.2d 1238, and *Sun Charm Ranch, Inc. v. City of Orlando,* 407 So.2d 938 (Fla. 5th DCA 1981), as holding that a party may call an expert originally consulted by the opposing party, but must be prohibited from offering evidence that the witness had previously been consulted by the opposing party, and citing *Rubel,* 160 F.R.D. at 458, as refusing to permit the expert to testify at all absent a showing of need). The court also cited *Broward County v. Cento,* 611 So.2d 1339 (Fla. 4th DCA, 1993), as holding that a witness designated pursuant to *Fed.R.Civ.P.* 26(b)(4)(A)(i) as expected to be called at trial should be treated differently from one merely consulted by the opposing party. *Peterson,* 81 F.3d at 1037. The Eleventh Circuit Court of Appeals found whether or not the expert had been designated as expected to be called at trial was not controlling in all respects. *Id.* However, the court found that "once a witness has been designated as expected to testify at trial, there may be situations when the witness should be permitted to testify for the opposing party." *Id.* The court concluded that deciding whether such a situation exists "is committed to the sound discretion of the district court." *Id.* at 1037–38 & n. 4. The Eleventh Circuit Court of Appeals recognized as error only the district court's conclusion that the jury could be told that the expert had originally been hired by the opposing party, not the conclusion that the expert could testify at trial for the plaintiff. *Id.* at 1038.

In a recent decision, the United States District Court for the Southern District of New York found that the "exceptional circumstances" standard of *Fed.R.Civ.P.* 26(b)(4)(B) was not controlling on the question of whether the testimony of an expert who had been consulted by one party, never designated as an expert by that party, but

---

**5.** The other reason the plaintiff in *Peterson* asserted was that defendants had called plaintiff's formerly designated expert merely to buttress the testimony of their own expert, and therefore the evidence was cumulative. *Peterson,* 81 F.3d at 1037. That issue has not been asserted directly here. However, the court notes that "cumulativeness" is less of a possible issue here, since House's own expert is a social worker, not a

psychiatrist. Thus, House's own expert will not testify to the same psychological principles and procedures as Dr. Taylor. *Cf. Durflinger,* 727 F.2d at 891 (party's own experts would testify to the same psychological principles and procedures as the opposing party's expert, and therefore the party did not have a need to call the opposing expert, as his testimony would have been cumulative).

deposed by the opposing party without objection, should be excluded at trial. *See Rubel v. Eli Lilly & Co.*, 160 F.R.D. 458, 460 (S.D.N.Y.1995). The court found that the interests in "free consultation" of a non-testify expert that Rule 26(b)(4)(B) was intended to protect were not in jeopardy, because of the original consulting party's failure to object to the opposing party's deposition of the expert. *Id.* In such circumstances, the court found that the fundamental consideration was not "exceptional circumstances," but the interests of the party seeking access to the expert and the interests of the court in an informed resolution of the claims in the case, balanced against the possibility of prejudice arising from prior retention of the expert by the opposing party. *Id.* The court found that the party seeking to use the expert had little interest in presenting the testimony of the opposing party's erstwhile consultative expert, because that testimony would be cumulative of testimony from its own experts. *Id.* However, the court found the possible prejudice to the opposing party, who had originally hired the expert, was great. *Id.* First, it seemed likely that, even if not told, the jury would be able to determine from the lack of an explanation of how the expert came into the case that the expert had been hired by the opposing party, and, second, that there was little reason to require efforts to prevent the jury from knowing how the expert became involved when the party had available to it other experts never consulted by the opposing party. *Id.* at 461. Expressly treating the question as governed by the balancing of interests required by *Fed.R.Evid.* 403, the court excluded the expert's testimony, not least because the party seeking to use the expert at trial had had ample time to obtain other expert testimony. *Id.* at 462.

### 3. The "entitlement" standard

Yet another group of courts apply yet another standard, at least in certain circumstances, to the question of whether a party should be allowed to call at trial an opposing party's expert. In *Crowe v. Nivison*, 145 F.R.D. 657 (D.Md.1993), the United States District Court for the District of Maryland held that submission to an examination by an expert "entitled" the examined party not just to a report of the examination pursuant to *Fed.R.Civ.P.* 35, but to a deposition of the expert for use at trial. *Crowe*, 145 F.R.D. at 657. The court concluded that neither the provisions of *Fed.R.Civ.P.* 26(b)(4)(B) nor the work product doctrine barred such discovery of the expert's opinions and use of the expert's deposition at trial. *Id.* at 657. The court specifically found unpersuasive the arguments of the party that had originally consulted the expert that the opposing party should only have access to the expert upon a showing of "exceptional circumstances." *Id.* The court found the case was not a typical Rule 26(b)(4)(B) or work product doctrine case, because of the opposing party's submission to an examination and entitlement to a report of that examination pursuant to Rule 35(b). *Id.* The court found that Rule 35 balances the privacy interests of the party examined with the interest of the party seeking the examination, the judicial system, and society as a whole in arriving at the truth of the matter, and "[i]n return for suffering an invasion of his person, the examined party is *entitled* to make use of such information as results from the examination." *Id.* at 658 (emphasis added).

Similarly, the United States District Court for the Eastern District of Pennsylvania concluded in *Fitzpatrick v. Holiday Inns, Inc.*, 507 F.Supp. 979 (E.D.Pa.1981), that the plaintiff should be able to call the defendant's expert who had examined the plaintiff pursuant to *Fed.R.Civ.P.* 35, even though the defendant subsequently decided not to use the expert and sought to prevent the plaintiff from using the expert or his report at trial. *Fitzpatrick*, 507 F.Supp. at 979. The court found that fairness required allowing the plaintiff to call the expert as the only person who could establish the foundation for introducing the expert's report, but that further examination of the witness must be limited to the preparation of his report and the facts and opinions contained therein. *Id.* Fairness also required that the plaintiff pay the physician's expert witness fee if the plaintiff used the physician at trial. *Id.* The court therefore allowed a subpoena to issue on behalf of the plaintiff to compel the defen-

dant's erstwhile expert to appear at trial as plaintiff's witness. *Id.*

## B. The Proper Standard Here

### 1. "Entitlement," "balancing," or "exceptional circumstances"?

■ This court is persuaded that whether the witness has been designated as an expert expected to testify at trial pursuant to *Fed.R.Civ.P.* 26(b)(4)(A) is a very significant difference from the situation in which an expert has merely been consulted by a party, but never designated as likely to testify at trial. Parties should be encouraged to consult experts to formulate their own cases, to discard those experts for any reason, and to place them beyond the reach of an opposing party, *if* they have never indicated an intention to use the expert at trial. *See, e.g., Rubel,* 160 F.R.D. at 460–61 (identifying interests served by Rule 26(b)(4)(A) and (B)). Such a consulted-but-never-designated expert might properly be considered to fall under the work product doctrine that protects matters prepared in anticipation of litigation. *Durflinger,* 727 F.2d at 891 (party should not have access to opposing party's diligent trial preparation, including experts consulted but not expected to be called at trial); *Rocky Mountain Natural Gas Co.,* 166 F.R.D. 481, 482 (purpose of Rule 26(b)(4)(B) is to prevent a litigant from unfairly benefitting from an opposing party's work and preparation). For this reason also, the ability of an opposing party to call a never-designated expert at trial should depend upon a showing of "extraordinary circumstances."

■ However, once an expert is designated, the expert is recognized as presenting part of the common body of discoverable, and generally admissible, information and testimony available to all parties. The practical effect of a Rule 26 designation of an expert is to make an expert available for deposition by the opposing party, *see Ringstad,* 142 F.R.D. at 465 ("If the expert is designated as a trial witness, the expert may be deposed by the opposing party."); *In re Shell Oil Refinery,* 132 F.R.D. at 440 (designation pursuant to Rule 26(a)(4)(A), as contrasted with subsection (B), authorizes discovery only from designated experts and that discovery may not occur until designation of an expert as expected to be called at trial), and such a deposition preserves the testimony of the expert, should the expert later become unavailable, or provides a basis for impeachment, should the expert's opinion offered at trial differ. Thus, Rule 26 designation waives the "free consultation" privilege a party enjoys as to its non-testifying experts. *Cf. Rubel,* 160 F.R.D. at 460 ("free consultation" privilege waived by permitting deposition of non-testifying expert). The court therefore concludes that designation of an expert as expected to be called at trial, pursuant to *Fed.R.Civ.P.* 26(b)(4)(A), even if that designation is subsequently withdrawn, takes the opposing party's demand to depose and use the expert at trial out of the "exceptional circumstances" category of Rule 26(b)(4)(B). *Contra Durflinger,* 727 F.2d at 891 (assuming expert as to whom designation is withdrawn should be treated as stated in Rule 26(b)(4)(B)).[6]

**6.** The present case is also distinguishable from *Durflinger* however, to the extent that the information upon which Dr. Taylor formed his opinion was not provided by Combined, but by House herself in the course of an examination. *Cf. Rocky Mountain Natural Gas Co.,* 166 F.R.D. 481, —— (the opposing party was not responsible for the information and opinions its consultative experts acquired regarding the case before being retained by that opposing party, and therefore the interests identified in *Durflinger* were not implicated). Pursuant to *Fed.R.Civ.P.* 35(b)(1), House was entitled, at a minimum, to Dr. Taylor's report. The state court decisions cited by Combined are also, therefore, inapplicable, because none of those decisions considers whether different standards apply in a situation in which a party had originally designated a witness as likely to testify at trial, then withdrawn that designation, and only one of them also involves a medical examination of the party demanding access to the expert. *See Young v. Strong,* 118 A.D.2d 974, 499 N.Y.S.2d 988 (1986) (concluding a party may not call an opposing party's expert, but not considering the question of whether designation of an expert as likely to testify at trial would require application of a different standard, and further not involving an expert who had examined the plaintiff); *Gugliano v. Levi,* 24 A.D.2d 591, 262 N.Y.S.2d 372 (1965) (not considering the effect of designation of an expert as likely to be called at trial, although the case did involve a medical examination of the opposing party); *Brink v. Multnomah County,* 224 Or. 507, 356 P.2d 536 (1960) (expert

Furthermore, designation, and submission to a medical examination by the designated expert, create the kind of reliance on the availability of the expert that the court in *Rubel* found lacking where an expert had been consulted, but never designated. *See Rubel*, 160 F.R.D. at 462 (plaintiff could not be heard to argue that she relied upon the availability of defendant's undesignated expert, where neither plaintiff nor defendant ever designated the expert); *see also Crowe*, 145 F.R.D. at 658 (Rule 35 balances the privacy interests of the party examined with the interest of the party seeking the examination, the judicial system, and society as a whole in arriving at the truth of the matter, and "[i]n return for suffering an invasion of his person, the examined party is entitled to make use of such information as results from the examination"). However, the court does not find that either designation under Rule 26(b)(4)(A) or the examination of the opposing party by the expert under Rule 35 creates an "entitlement" of the opposing party to depose or use another party's expert at trial. *Contra Crowe*, 145 F.R.D. at 657–58; *Fitzpatrick*, 507 F.Supp. at 979. Rule 35 undeniably provides for invasion of the privacy of the examined party, and in subsection (b)(2), specifically provides for waiver of the examined party's privilege if that party requests a report from the examining expert. *Fed.R.Civ.P.* 35(b)(2). However, Rule 35 just as undeniably *does not* provide for deposition or use at trial of the examining expert by either party. Instead, Rule 35 provides only for the examined party's right to receive the expert's report. *Fed.R.Civ.P.* 35(b)(1) ("If requested by the party against whom an order is made under Rule 35(a) or the person examined, the party causing the examination to be made *shall* deliver to the requesting party a copy of the detailed written report of the examiner....."; emphasis added); *Ringstad*, 142 F.R.D. at 464 (Rule 35(b)(1) provides that an examined party is entitled to a copy of the examiner's report); *Salvatore*, 94

F.R.D. at 158 (examined party is entitled, upon request, to a report of an examining expert under Rule 35(b)(1)).

What, then, is the proper standard for House's access to and use at trial of Dr. Taylor, where both a Rule 26(b)(4)(A) designation has occurred, albeit a designation subsequently withdrawn, and a Rule 35 medical examination has occurred? The court concludes that the proper standard in these circumstances is a "discretionary" standard, where the trial court's discretion is guided by a balancing of probative value against prejudice under *Fed.R.Evid.* 403. *Accord Peterson*, 81 F.3d at 1036–38; *Rubel*, 160 F.R.D. at 460–61.[7] Such a standard takes into account the interests Rule 26 was designed to protect and those of the party who originally hired the expert, to the extent that party has not waived such an interest, *Rubel*, 160 F.R.D. at 460 (party who hired expert waived "free consultation" privilege by allowing deposition of the expert), as well as taking into account the peculiar prejudice that could arise if the jury is informed that an expert presented by one party was hired, then dropped, by the other party. *See, e.g., Peterson*, 81 F.3d at 1037 (discussing this prejudice). It also recognizes the court's interest in the proper resolution of issues, *Rubel*, 160 F.R.D. at 460 (identifying the court's interest as "an informed resolution of plaintiff's claim"); *Crowe*, 145 F.R.D. at 658 (identifying the court's interest and that of society as a whole as "arriving at the truth of the matter"), which is more objective than the plaintiff's interest in proving the truth of his or her claims, and the interests of the party seeking the testimony in presenting to the jury the results of an intrusive examination where those results are favorable to the party who suffered the invasion of privacy. *Crowe*, 145 F.R.D. at 658 (examined party's interest after Rule 35 examination is presentation of results of the examination "[i]n return for suffering an invasion of his person").

---

was hired as an "adviser," not as a testifying expert).

7. Indeed, the court believes that this standard should be applicable whenever a Rule 26(b)(4)(A) designation has occurred, but that the factor of a Rule 35 examination of the opposing party

weighs particularly heavily in favor of the examined party's interests in all facts relevant to the examined party's claims coming to light. *See Crowe*, 145 F.R.D. at 658 (identifying these as the examined party's interests).

This conclusion is not contrary to the undersigned's prior opinion in *Ringstad*. *Ringstad*, 142 F.R.D. at 464–65. In *Ringstad*, the undersigned concluded that, despite a Rule 35 examination of the plaintiff, Rule 26(b)(4)(B) barred the deposition of the opposing party's expert who was not expected to be called at trial. *Id.* *Ringstad* is therefore consistent with what the court recognizes here to be the general rule with regard to never-designated experts and the court's present determination that a Rule 35 examination does not create an "entitlement" to depose or use at trial an expert who has examined the plaintiff. *Ringstad*, however, did not involve the situation where an expert was designated, then withdrawn after a Rule 35 examination when his opinion was actually ascertained. However, in *Ringstad*, the undersigned observed that "[i]f the expert is designated as a trial witness, the expert may be deposed by the opposing party." *Id.* at 465 (citing *Fed.R.Civ.P.* 26(b)(4)(A)). The undersigned also observed that the policy behind Rule 26's requirements for access to experts was "fairness," *id.*, which the court believes is best protected by the standard enunciated here as applicable in the unique circumstances of withdrawal of a prior designation. Thus, the court considers the situation here to be governed by balancing, in the court's discretion, probative value versus prejudice, as articulated in *Fed.R.Evid.* 403.

### 2. The balance here

■ Performing the required balancing of interests here, the court finds that House has a very significant interest in presenting to the jury the results of Dr. Taylor's examination. However, the court is less convinced than was the court in *Crowe*, 145 F.R.D. at 658, that the plaintiff has an interest in presentation of evidence resulting from an "invasion of privacy" Dr. Taylor's examination may have occasioned. The court is instead convinced that the plaintiff has an interest in presenting Dr. Taylor as a witness, because he now has relevant information probative of plaintiff's alleged emotional distress, and that there is a difference between the nature of Dr. Taylor's psychiatric evaluation and House's own expert's methods, where House's own expert is a social worker, not a

physician, such that Dr. Taylor's testimony is not merely cumulative of House's own expert's opinion. *Cf. Rubel*, 160 F.R.D. at 462 (court precluded use of the expert by an opposing party, because the evidence was cumulative of the opposing party's own experts, such that the prejudice to the other party was not outweighed). The interests weighing in favor of presentation of Dr. Taylor's evidence also include the court's interest in proper resolution of the issues before the court, *Rubel*, 160 F.R.D. at 460, and the fact that the designation of Dr. Taylor as an expert expected to be called at trial established the "reliance" missing in *Rubel*, because House was only asked to consent to an examination after Dr. Taylor had been designated, and that consent may have been based, at least in part, on the expectation that Dr. Taylor would testify at trial. The much more complicated side of the scales is the weight to be given the potential prejudice to Combined and any other interests Combined may have in precluding Dr. Taylor's testimony.

All too often, parties designate expert witnesses as likely to testify at trial to meet a court-imposed deadline, even though they have not actually hired the expert, but are only planning to, and even though the expert has not conducted any examination of the opposing party, if necessary to the expert's opinion, or even been provided with pertinent information from which the expert's opinion will be derived. The court's holding here will serve the salutary policy of requiring parties to give some thought and care to their expert witness designations, because once those designations are made, the party will have to live with the consequence that the opposing party will likely be given the opportunity to depose the expert or even to call the expert at trial on their own behalf. Furthermore, one purpose of Rule 26 is to prevent a party from piggybacking on another party's trial preparation. *See, e.g., Rubel*, 160 F.R.D. at 460. Thus, a party who waits to make a designation of an expert, or waits to discover the expert's opinion on the merits, because the opposing party hasn't yet designated its expert or experts, is attempting to piggyback its own discovery and trial preparation on

that of the opposing party, contrary to the purpose of Rule 26. Such a party has not properly utilized an as yet undesignated expert to ascertain the merits of the case, nor taken advantage of the protection from discovery such expert advice on the merits of the case enjoys. *See Rubel,* 160 F.R.D. at 460 (use of an undesignated expert and the protection from discovery afforded an undesignated expert is to allow a party to make an evaluation of the merits of the case without fear of the opposing party looking over the party's shoulder). In this case, Combined has always known that emotional distress damages would be at issue in this case, from the complaint and Ms. Burrows's records concerning House supplied to Combined in 1995, but seemingly did not take the steps necessary to prepare to meet that claim. The court finds little interest in relieving a party of the consequences of an expert designation made simply to meet a court-ordered deadline, when Rule 26 provides every protection for finding and using an expert to prepare for trial prior to designation of the expert as expected to testify at trial.

However, the court sees a tremendous potential for prejudice to Combined simply in the revelation to the jury that Combined originally hired, designated, then dropped Dr. Taylor as an expert after his examination of the plaintiff once Dr. Taylor's opinions were actually known. *Accord Peterson,* 81 F.3d at 1036–37. Combined should not suffer the obvious prejudice disclosure of its prior contact with Dr. Taylor would likely have where that prejudice can be avoided. The proper evidentiary issue remains Dr. Taylor's opinion, not how he became involved in the case, as only his opinion serves the plaintiff's proper interests in discovering the truth of the plaintiff's claims. Thus, House's argument to the court for access to Dr. Taylor based on assertions that Combined is improperly "hiding" information is an attempt to trade on the very prejudice this court concludes it must prevent.

The court concludes that it can indeed avoid or largely eliminate the potential prejudice of disclosure to the jury of Combined's prior contact with Dr. Taylor. Neither party nor Dr. Taylor himself will be allowed to refer to how Dr. Taylor became involved in the case. *See Peterson,* 81 F.3d at 1038; *Fitzpatrick,* 507 F.Supp. at 979. Contrary to the concerns of the court in *Rubel,* 160 F.R.D. at 461 & n. 3, the court considers it unlikely that the jury will be concerned with how Dr. Taylor became involved in the litigation. House's own emotional distress expert, Ms. Burrows, is a "treating" professional, and the jury is likely to assume unless told otherwise, on the basis of Dr. Taylor's examination of House, that he too became involved in this case to treat or evaluate House. The court will allow House to call Dr. Taylor, so long as evidence of how he became involved in the case is excluded. The court's conclusion is in accord with the conclusions of the Eleventh Circuit Court of Appeals in *Peterson,* in which the appellate court concluded that the district court should not have allowed the expert to testify as to how he became involved in the case, but did not find error in the district court's decision to allow the expert to testify. *Peterson,* 81 F.3d at 1038; *see also Fitzpatrick,* 507 F.Supp. at 979 (reaching a similar conclusion, by allowing testimony of the expert, but limited to the facts and opinions in his report). If House decides to call Dr. Taylor at trial, fairness dictates that House pay his expert witness fee. *Fitzpatrick,* 507 F.Supp. at 979.

Because the court concludes that House is entitled to call Dr. Taylor as a witness at trial, under the circumstances presented here, and in light of a balance of the parties' interests against prejudice to Combined, the court will allow the pretrial deposition of Dr. Taylor by House in order to preserve his testimony for trial,[8] should he be unavailable at that time for any reason.[9]

---

8. This conclusion is contrary to Judge Jarvey's ruling of July 2, 1996, but the court concludes that Judge Jarvey assumed that the "exceptional circumstances" standard was applicable here, and this court's conclusion is to the contrary.

9. Although it was not the only reason Dr. Taylor might be unavailable, the parties expressed some concern that Dr. Taylor might fall outside of the subpoena power of this court at the time of trial, because he resides in Des Moines, which is outside of this district and more than one hundred miles away. The court has not as yet been

### III. CONCLUSION

The court concludes that designation of an expert as likely to testify at trial, pursuant to *Fed.R.Civ.P.* 26(b)(4)(A), even if that designation is subsequently withdrawn, removes the question of whether an opposing party should be able to depose and call the expert at trial from the "exceptional circumstances" requirements of *Fed.R.Civ.P.* 26(b)(4)(B). Instead, designation of the expert as likely to testify at trial invokes the court's discretionary balancing of probative value versus prejudice articulated in *Fed.R.Evid.* 403 to determine whether or not to allow the opposing party access to the expert once the designation has been withdrawn. After conducting such a balance of interests in this case, the court concludes that House may depose Dr. Taylor and call him at trial. However, in order to avoid the potential for prejudice to Combined if the jury is advised that Combined originally hired, then dropped, Dr. Taylor as an expert, no party or witness may refer to the manner in which Dr. Taylor became involved in this litigation beyond the fact of his examination of the plaintiff. Also, in the interests of fairness, if House calls Dr. Taylor, House will be required to pay his expert witness fee.

Combined's motion in limine concerning Dr. Taylor is **denied** to the extent that it seeks to preclude deposition and trial testimony of Dr. Taylor, but **granted** to the extent that no party may refer to the manner in which Dr. Taylor became involved in this litigation beyond the fact of his examination of the plaintiff. In order to preserve Dr. Taylor's testimony should he be unavailable at the time of trial, House may depose Dr. Taylor prior to trial, any prior order notwithstanding.

**IT IS SO ORDERED.**

---

directly presented with the question of whether Dr. Taylor is subject to the court's subpoena power, nor with the question of whether Dr. Taylor is otherwise unavailable, and will, of course, await such a question, should it arise, before ruling on it. However, the court observes that *Fed.R.Civ.P.* 45 provides, *inter alia*, that a federal court may "borrow" the subpoena powers of state courts in the state in which it sits. *Fed.R.Civ.P.* 45(b)(2) (providing in part that "a subpoena may be served at any place *within the district of the court* by which it is issued, *or at any place without the district that is within 100 miles of the place of the ... trial ...* specified in the subpoena *or at any place within the state where a state statute or rule of court permits service of a subpoena issued by a state court....*"; emphasis added). The court also observes that Iowa Rule of Civil Procedure 147 provides that "oral depositions may be taken only in this state, or outside it at a place within one hundred miles from the nearest Iowa point ...," *Iowa R.Civ.P.* 147(a), but that Rule 155 provides that if subpoenaed, "[n]o resident of Iowa shall be thus subpoenaed to attend out of the county where he resides, or is employed, or transacts his business in person." *Iowa R.Civ.P.* 155(b).