Carmen **ROSA–MELENDEZ,** et al., **Plaintiffs,**

v.

**INVACARE CORPORATION,** et al., **Defendants.**

Civil No. 09–1303 (FAB).

United States District Court, D. Puerto Rico.

May 6, 2010.

---

Cesar A. Andreu, Andreu & Andreu, Edif Centro de Seguros, San Juan, PR,

Francisco J. Andreu–Ramirez, Megwinoff Law Offices, Miramar, PR, for Plaintiffs.

Pedro Santiago–Rivera, Viviana M. Berrios–Gonzalez, Reichard & Escalera, Dario Rivera–Carrasquillo, Giancarlo Font–Garcia, Dario Rivera Carrasquillo Law Offices, Manuel Cobian–Roig, San Juan, PR, for Defendants.

## OPINION & ORDER

BESOSA, District Judge.

Before the Court is plaintiffs' motion informing its decision to present the testimony of an opposing party's expert witness at trial. (Docket No. 98.) Having considered the arguments contained in plaintiffs' motion, defendants' responses, plaintiffs' response to the Court's order to show cause, and plaintiffs' reply to defendants' responses, the Court **GRANTS** plaintiffs' motion to use an opposing party's expert witness at trial, (Docket No. 98.)

## DISCUSSION

### I. Procedural Background [1]

Plaintiffs allege claims pursuant to the Consumer Product Safety Act and Article 1802 of the Puerto Rico Civil Code against: (1) Invacare Corporation ("Invacare"); (2) UMECO, Inc. ("UMECO"); and (3) Ryder Memorial Hospital and Hogar Ryder (collectively "Ryder"). (*See* Docket No. 1.) The original discovery deadlines in the present case required the plaintiffs to disclose their expert witness by the time of the initial scheduling conference. (Docket No. 25.) In compliance with that deadline, plaintiffs' announced Mr. Milton Castro as their expert witness in their initial schedul-

---

1. Because plaintiffs' motion and defendant's responses address only a procedural issue regarding whether plaintiffs will be allowed to use Mr. Robinson's testimony at trial, the Court will only relate the procedural background surrounding the present motion and the relevant discovery deadlines.

ing conference memorandum. (*See* Docket No. 34 at 19.) All parties were subsequently ordered to provide their expert reports and *curricula vitae* no later than January 21, 2010. (Docket No. 40 at 9.) Although plaintiffs did not provide their expert report to defendants until January 25, 2010, (*see* Docket No. 72 at ¶ 6), the Court denied a joint motion to strike their expert filed by Invacare, UMECO, and Ryder. (Docket No. 73.)

On February 11, 2010, plaintiffs 'filed a motion informing the Court that Mr. Milton Castro had died and requesting a ten-day extension of time in order to secure a new expert witness. (Docket No. 77.) The Court granted plaintiffs' motion and ordered that any revision or supplement to the expert report originally filed by plaintiffs must be done no later than March 12, 2010. (Docket No. 78.) On March 12, 2010, plaintiffs' filed another motion informing the Court that they had retained the services of Mr. Rafael Castro, the son of their previous expert, and requesting an thirty-day extension of time for Mr. Rafael Castro to review documentation and inspect the site of the incident giving rise to this litigation. (Docket No. 79.) The Court granted plaintiffs' motion, giving Mr. Rafael Castro until April 12, 2010 to conduct his review and inspection. (Docket No. 80.)

On April 15, 2010, the Court set an April 19, 2010, deadline for plaintiffs' to provide their new expert report. The Court subsequently granted another motion for an extension of time, moving the deadline for plaintiffs' report to April 21, 2010. On that date, plaintiffs filed an informative motion, stating that their new expert had been unable to prepare a timely report due to other work-related commitments. (Docket No. 98.) Plaintiffs disclosed their intention to rely instead on the expert opinion of Mr. Glen Robinson, the expert

witness retained months earlier by Ryder. *Id.* The Court ordered defendants to respond to plaintiffs' informative motion no later than April 28, 2010. (Docket No. 99.) The Court later ordered plaintiffs to show cause no later than April 28, 2010, as to why they should be allowed to use Mr. Robinson's testimony at trial. (Docket No. 106.)

On April 26, 2010, Invacare and UMECO filed their response, arguing that plaintiffs should not be allowed to use Mr. Robinson's testimony because they did not comply with the expert disclosure requirements of Federal Rule of Procedure 26 ("Rule 26") and plaintiffs' reliance on Mr. Robinson's expert opinion would constitute an impermissible change in plaintiffs' theory of liability. (Docket No. 107.) Also on April 28, 2010, plaintiffs filed their response to the Court's order to show cause, claiming that neither the timing of their request nor Ryder's relationship with Mr. Robinson prevented their use of his expert opinion at trial. (Docket No. 113.) After the Court granted an extension of time, Ryder filed its response to plaintiffs' motion on May 3, 2010, arguing that: (1) plaintiffs' request is untimely; (2) granting plaintiffs' request would damage Ryder's relationship with Mr. Robinson; and (3) practical difficulties impede plaintiffs' ability to call Mr. Robinson at trial. (Docket No. 116.) On May 5, 2010, plaintiffs filed a reply to defendants' responses. (Docket No. 117.)

## II. Legal Analysis

"Decisions regarding the mode and order of witness questioning lie within the district court's broad discretion." *Nat'l R.R. Passenger Corp. v. Certain Temporary Easements Above the R.R. Right of Way in Providence, R.I.*, 357 F.3d 36, 42 (1st Cir.2004); Fed.R.Evid. 611(a). Several courts have exercised that discretion to

allow a party to call an opposing party's expert witness during their case in chief. *See id.; Olsen v. Delcore,* No. 2:07–CV–334 TS, 2009 WL 3055411 at *2 (D.Utah Sep. 24, 2009); *Kerns v. Pro–Foam of South Ala., Inc.,* 572 F.Supp.2d 1303, 1309–10 (S.D.Ala.2007); *Penn Nat'l Ins. Co. v. HNI Corp.,* 245 F.R.D. 190, 194 (M.D.Pa. 2007); *House v. Combined Ins. Co. of America,* 168 F.R.D. 236, 245 (N.D.Iowa 1996).

The primary argument of both Ryder and Invacare is that plaintiffs have not complied with the deadlines imposed by Rule 26 regarding disclosure of expert witnesses. "[Rule 26] [e]xpert disclosure requirements are not merely aspirational, and courts must deal decisively with a party's failure to adhere to them." *Lohnes v. Level 3 Communications, Inc.,* 272 F.3d 49, 60 (1st Cir.2001). These requirements are designed to promote a "fair contest with the basic issues and facts disclosed to the fullest practical extent[,]" and "prevent the unfair tactical advantage that can be gained by failing to unveil an expert in a timely fashion, and thereby potentially deprive [an opposing party] of the opportunity to 'depose the proposed expert, challenge his credentials, solicit expert opinions of his own, or conduct expert-related discovery.'" *Poulis–Minott v. Smith,* 388 F.3d 354, 358 (1st Cir.2004); *Lohnes,* 272 F.3d at 60.

■ Defendants' argument misses the mark because plaintiffs' request to use Mr. Robinson is not the tardy disclosure of an expert witness prohibited by Rule 26.

First, plaintiffs' disclosed their desire to elicit Mr. Robinson's testimony at trial, albeit after numerous extensions of time, within the deadline set by the Court following the death of their former expert. (*See* Docket Nos. 78, 80, 94, 97, & 98.) Second, any danger of the kind of unfair surprise targeted by Rule 26 is minimal because Mr. Robinson has been a disclosed expert witness in this case for months. *See Kerns,* 572 F.Supp.2d at 1309–10 ("'The rules governing expert disclosures are intended to shield litigants from unfair surprise, not to be used by opportunistic litigants as a sword to strike down witnesses whose identities and proposed testimony have been known to them from the outset of the lawsuit'") (quoting a previous order in the same case). Further limiting any danger of surprise, plaintiffs have not indicated that they intend to elicit any testimony or opinion from Mr. Robinson that he has not already disclosed in his expert witness report. (*See* Docket Nos. 98, 113, & 117.) Accordingly, the Court does not find that plaintiffs have violated Rule 26 in any way sufficient to merit barring their use of Mr. Robinson's testimony at trial.[2]

Ryder cites to a case from the Ninth Circuit, *Sanchez v. Dupnik,* 362 Fed.Appx. 679 (9th Cir.2010), to support its argument that the timing of plaintiffs' request should prevent their use of Mr. Robinson's testimony. (Docket No. 116.) In that case, the Ninth Circuit Court of Appeals held that a district court did not abuse its discretion when it ruled that a party could not

---

**2.** Invacare also argues that plaintiffs' decision to use Mr. Robinson's expert opinion changes the theory of liability on which plaintiffs have relied for the entire course of litigation in the present case. (Docket No. 107 at 9.) Invacare claims that plaintiffs should not be allowed to make this change. *Id.* Invacare's only support for this argument focuses on the expense and prejudice that can result from a change

of theory caused by the late disclosure of a new expert witness. *See Parrish v. Freightliner, LLC,* 471 F.Supp.2d 1262, 1270 (M.D.Fla. 2006). As noted above, the danger of such prejudice is extremely low because Mr. Robinson has been a designated expert witness in this case for months. Accordingly, Invacare's second argument against plaintiffs' request to use Mr. Robinson's testimony fails.

call an opposing party's expert during its case in chief where that party did not request to do so until fifteen days prior to trial. *Id.* at 680–81. The court in *Sanchez* also relied, however, on the lack of justification offered by the moving party for its request to use an opposing party's expert. *Id.* When making the request, the moving party stated only that " '[i]t looks weird that we don't have an expert. . . .' " *Id.*

Unlike the moving party in *Sanchez*, 362 Fed.Appx. at 680–81, plaintiffs have stated that at least some of the theories disclosed in Mr. Robinson's expert report line up with their trial strategy. (*See* Docket No. 113 at 2.) Furthermore, plaintiffs indicated their intention of relying on the expert testimony of Mr. Robinson on April 21, 2010, nearly two months prior to the commencement of trial. Therefore, the Court finds Ryder's reliance on *Sanchez*, unpersuasive because of the particular circumstances of this case. *See id.*

Ryder also asserts that due to Mr. Robinson's access to their trial preparation and strategy, "access to [Mr. Robinson] by the Plaintiffs at this stage of the proceedings . . . would be detrimental to [Ryder's] relationship with their expert." (Docket No. 116 at 4.) Ryder does not make any specific argument, however, as to how allowing plaintiffs to present Mr. Robinson's expert opinion at trial would endanger either Ryder's relationship with Mr. Robinson or information related to their trial preparation and strategy. Given the lack of any specific prejudice to Ryder, this argument does not bolster the objections to plaintiffs' use of Mr. Robinson as an expert witness at trial.

■ As to Mr. Robinson's opinions, several courts have held that parties may not monopolize their expert witness's testimony. *Olsen*, 2009 WL 3055411 at *2; *Kerns*, 572 F.Supp.2d at 1311; *Penn Nat'l Ins. Co.*, 245 F.R.D. at 194; *House*, 168

F.R.D. at 245. "Merely because [a party] retained [an expert witness] and designated him as a testifying expert before [other parties] did does not somehow imbue [that party] with absolute, exclusive dominion to control the circumstances and manner through which his testimony reaches the jury." *Kerns*, 572 F.Supp.2d at 1311. Therefore, Ryder's relationship with Mr. Robinson does not serve as a bar to the admissibility of his opinions by any other party at trial.

Ryder further suggests practical difficulties in plaintiffs' use of Mr. Robinson's testimony by stating that "Mr. Robinson lives outside of the jurisdiction and subpoena power of this Honorable Court and has not been paid by Plaintiffs for his testimony." (Docket No. 116 at 4.) This argument confuses the issue of whether plaintiffs may call Mr. Robinson as an expert witness at trial with the issue of whether plaintiffs can manage the practicalities of actually presenting Mr. Robinson's testimony at trial. *See Olsen*, 2009 WL 3055411 at *2 ("The Court is merely permitting Plaintiff to call Dr. Janzen and leaves the logistics of making this request a reality up to Plaintiff"). This opinion and order considers only the former issue, leaving any practical difficulties involved with the latter entirely to plaintiffs. Accordingly, Ryder's last argument does not lend weight to defendants' objection to plaintiffs' use of Mr. Robinson's expert testimony.

## CONCLUSION

For the reasons expressed above, the Court **GRANTS** plaintiffs' motion requesting the use of Mr. Robinson's expert testimony at trial. (Docket No. 98.) To avoid the danger of any unfair surprise as described above, plaintiffs will be limited to the scope of Mr. Robinson's opinions in-

cluded in his previously disclosed expert witness report.

**IT IS SO ORDERED.**